HAROCO, INC., et al.,
Plaintiffs-Appellants,

v.

AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, Walter E. Heller International Corporation, & Ronald J. Grayheck, Defendants-Appellees.

No. 83–2529.

United States Court of Appeals,
Seventh Circuit.

Argued May 6, 1984.

Decided Oct. 19, 1984.*

Certiorari Granted Jan. 14, 1985.

See 105 S.Ct. 902.

---

* This opinion has been circulated among all judges of this court in regular active service. No judge favored a rehearing *en banc* on the question of the conflict with the Second Circuit decisions in *Sedima, S.P.R.L. v. Imrex Co.,* 741 F.2d 482 (2d Cir.1984), *cert. granted,* —— U.S. ——, 105 S.Ct. 901, 83 L.Ed.2d 917 (1985); *Bankers Trust Co. v. Rhoades,* 741 F.2d 511 (2d Cir.1984); and *Furman v. Cirrito,* 741 F.2d 524 (2d Cir.1984).

Aram A. Hartunian, Hartunian, Futterman & Howard, Chicago, Ill., for plaintiffs-appellants.

Donald E. Egan, Katten, Muchin, Zavis, Pearl & Galler, Chicago, Ill., for defendants-appellees.

Before BAUER and CUDAHY, Circuit Judges, and KELLAM, Senior District Judge.**

CUDAHY, Circuit Judge.

This appeal presents several issues involving civil claims under the federal Racketeer Influenced and Corrupt Organizations ("RICO") statute. 18 U.S.C. §§ 1961–1968. The central issue concerns the type of injury a private civil plaintiff must allege to support a RICO claim under 18 U.S.C. § 1964(c). We must also consider several questions involving the RICO provisions requiring that a "person" conduct or participate in the conduct of the affairs of an "enterprise" through a pattern of racketeering activity, as those terms are defined in RICO. 18 U.S.C. § 1962(c). We affirm in part and reverse in part.

## I

This is an appeal from the district court's dismissal for failure to state a claim. We shall therefore treat all allegations in the complaint as true and view them in the light most favorable to plaintiffs. The case arises from loans made by defendant American National Bank & Trust Company of Chicago ("ANB") to plaintiffs. Plaintiffs are several businesses, Haroco, Inc., Roman Ceramics, Inc., California Originals, Inc. and Mike Wayne Distilled Products Co. Haroco independently and together with other plaintiffs borrowed several million dollars from ANB between 1979 and 1981. Each loan agreement provided that the rate of interest would be "one per cent over the bank's prime rate," and the prime rate was defined as the "rate of interest charged by the bank to its largest and most creditworthy commercial borrowers for 90-day unsecured commercial loans." The defendants, in addition to ANB, are Ronald J. Grayheck, who is an officer and director of ANB, and Walter E. Heller International Corporation ("Heller International"), which is the parent company of ANB.[1]

Plaintiffs brought this action in March 1983 alleging that defendants had defrauded them in the calculation of the prime rate which determined their own variable interest payments. The only alleged injuries were excessive interest charges resulting from defendants' calculation of the prime rate. Plaintiffs included in their complaint three state law causes of action and two counts based on alleged violations of the federal Racketeer Influenced and Corrupt Organizations ("RICO") provisions in 18 U.S.C. §§ 1961–1968.[2] As we shall explain in more detail below, plaintiffs' RICO claims were predicated on defendants' use of the mails in furtherance of the alleged scheme to defraud plaintiffs by overstating the prime interest rate. Count I of the amended complaint alleged that defendant ANB violated 18 U.S.C. § 1962(c) by conducting ANB's and Heller International's affairs through a pattern of racketeering activity. Count II alleged that defendants Heller International and Grayheck violated section 1962(c) by conducting ANB's af-

---

** Honorable Richard B. Kellam, Senior District Judge for the Eastern District of Virginia, is sitting by designation.

1. According to the complaint, ANB has at all relevant times been either a wholly owned subsidiary of Heller, or a wholly owned subsidiary of American National Corporation, which in turn is a wholly owned subsidiary of Heller.

2. RICO was enacted as Title IX of the Organized Crime Control Act of 1970, Pub.L. 91–452, 84 Stat. 922.

fairs through a pattern of racketeering activity.

Defendants moved on three principal grounds to dismiss the RICO counts. First, they argued that plaintiffs failed to allege the requisite causal relationship between their injuries and the RICO violations. Second, defendants argued that plaintiffs failed to allege the requisite relationships between "persons" and the "enterprises," the affairs of which were allegedly conducted through patterns of racketeering activity. Third, defendants argued that plaintiffs had not pleaded the predicate acts of mail fraud with the necessary particularity.

The district court concluded that the plaintiffs had failed to state claims under RICO because they did not allege that they had suffered any injury by reason of a RICO violation in addition to the injuries caused by the alleged mail fraud. The district court held "that a plaintiff's injury to be cognizable under RICO must be caused by a RICO violation and not simply by the commission of predicate offenses, such as acts of mail fraud." *Haroco, Inc. v. American National Bank & Trust Co.,* 577 F.Supp. 111, 114 (N.D.Ill.1983). The district court therefore dismissed plaintiffs' RICO claims without reaching defendants' other arguments. Because there was no other ground for federal jurisdiction, the district court also dismissed the remaining pendent state law claims.

## II

Before proceeding to the specific issues raised on this appeal, we must first sketch RICO's broad civil provisions. This court recently said that the civil RICO provisions are "constructed on the model of a treasure hunt." *Sutliff, Inc. v. Donovan Companies,* 727 F.2d 648, 652 (7th Cir.1984). We begin the hunt with 18 U.S.C. § 1964(c), which provides the private cause of action:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). We must next turn to section 1961, which provides special statutory definitions for the key terms of section 1962(c). "Racketeering activity" is defined in section 1961(1) in terms of a long list of state and federal crimes, including mail fraud, 18 U.S.C. § 1341. A person commits mail fraud by using the mails for the purpose of executing a scheme or artifice to defraud. 18 U.S.C. § 1341; *United States v. Wormick,* 709 F.2d 454, 461–62 (7th Cir. 1983). A "pattern of racketeering activity," as required by section 1962(c), requires at least two acts of racketeering activity within a ten year period. 18 U.S.C. § 1961(5). The individual acts of racketeering activity, such as the alleged mail fraud in this case, are usually described as the "predicate offenses."

RICO also defines "person" and "enterprise" very broadly. The term "person" includes "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). The term "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

RICO's terms are obviously very broad. Because various fraud offenses are included in the definition of "racketeering activity," RICO claims (with their treble-damage provisions) have recently become attractive to many plaintiffs in commercial disputes

Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

The next step is to examine section 1962, which describes the prohibited conduct. In this case, the most relevant portion of the section provides:

that otherwise might involve only breach of contract, or securities or state law fraud claims. In cases involving allegations of commercial fraud, for example, it is often possible for a plaintiff to allege two acts of mail fraud, thus constituting a "pattern of racketeering activity," and to allege further that the defendant conducted the affairs of an "enterprise" through that pattern of racketeering activity in violation of section 1962(c). Whether RICO's broad terms should be read literally to permit RICO claims in instances of such "garden variety" fraud has recently been the subject of extended debates in the federal courts. The central issue in this case concerns the type of injury a plaintiff must allege to sustain a RICO claim.

## III

■ The district court concluded that the plaintiffs were required to allege some injury in addition to injuries resulting from the predicate acts of racketeering. The courts imposing such a requirement have often referred to the additional injury as a "racketeering injury" or "racketeering enterprise injury." We shall use the term "racketeering injury." The district court focused on the requirement in 18 U.S.C. § 1964(c) that the RICO plaintiff be injured "by reason of a violation of section 1962," and interpreted that language to mean that allegations of injuries resulting only from the predicate acts of racketeering would not support a RICO claim. 577 F.Supp. at 113–15. Because the only alleged injuries in this case were excessive interest payments resulting from the underlying fraud, the district court dismissed the RICO counts. The district court did not suggest what additional injuries might satisfy section 1964(c).

At the outset we should avoid confusion by distinguishing a "racketeering injury"

from the elements of a RICO cause of action spelled out explicitly in the statute. There can be no doubt that to state a claim under RICO, a civil plaintiff must allege more than the occurrence of two predicate acts of racketeering from the list in section 1961. The elements of a civil RICO claim are set forth in sections 1964(c) and 1962. The plaintiff must allege an injury to "business or property," and that injury must be "by reason of a violation of section 1962." 18 U.S.C. § 1964(c). In this case we are concerned only with the conduct prohibited by subsection (c) in section 1962, and not with the provisions of subsections (a), (b) or (d). To allege a violation of section 1962(c), the plaintiff must allege that the defendant (1) was employed by or associated with (2) an enterprise engaged in, or the activities of which affected, interstate or foreign commerce, and (3) that the person conducted or participated in the conduct of the enterprise's affairs (4) through a pattern of racketeering activity. *Alcorn County v. U.S. Interstate Supplies, Inc.*, 731 F.2d 1160, 1167–68 (5th Cir.1984); *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984).

The "racketeering injury" requirement imposed by the district court here goes farther than this elementary exposition of RICO. The district court required a special kind of injury for RICO claims. That "racketeering injury" is presumably something peculiar to RICO, although the district court here did not explain what the requirement is.

Whether a claim under section 1964(c) requires a racketeering injury has recently been one of the most hotly disputed RICO issues in the federal courts. The district courts in this circuit have disagreed on the issue,[3] and district courts in other circuits

---

**3.** In addition to the district court's decision in this case, *Haroco, Inc. v. American National Bank & Trust Co.*, 577 F.Supp. 111, 114–15 (N.D. Ill.1983), the district court concluded that a racketeering injury is required under RICO in *County of Cook v. Midcon Corp.*, 574 F.Supp. 902, 919–20 (N.D.Ill.1983) (Leighton, J.). Dis-

trict court decisions in this circuit refusing to require a racketeering injury include *Kosch v. Parkway Bank & Trust Co.*, No. 83 C 4832, slip op. at 8–9 (N.D.Ill. March 9, 1984) (Getzendanner, J.); *Addis v. Moser*, No. 83 C 6118, slip op. at 12–18 (N.D.Ill. Feb. 15, 1984) (Marshall, J.);

are also divided.[4] Although we have not tried to count cases, there does not appear to be a clear weight of authority at the district court level either for or against the racketeering injury requirement.

Among the courts of appeals, the situation is more complicated. In *Schacht v. Brown*, 711 F.2d 1343 (7th Cir.), *cert. denied*, — U.S. —, —, 104 S.Ct. 508, 509, 78 L.Ed.2d 698 (1983), the leading Seventh Circuit case on civil RICO, we rejected several arguments which are closely related to the racketeering injury question. After oral argument in this case, the Second Circuit issued three decisions which, together, amount to an en banc ruling by the Second Circuit in support of some sort of racketeering injury requirement. *Sedima,*

*S.P.R.L. v. Imrex Co.*, 741 F.2d 482 (2d Cir.1984), *cert. granted*, 83 U.S. 917, 105 S.Ct. 901, — L.Ed.2d — (1985); *Bankers Trust Co. v. Rhoades*, 741 F.2d 511 (2d Cir. 1984); *Furman v. Cirrito*, 741 F.2d 524 (2d Cir.1984).[5] By contrast, several recent decisions by this and other courts assume that injuries resulting from the predicate acts of racketeering satisfy RICO's requirements. *Sutliff, Inc. v. Donovan Companies, supra*, 727 F.2d at 653–54; *Alcorn County v. U.S. Interstate Supplies, Inc., supra*, 731 F.2d at 1169; *Bunker Ramo Corp. v. United Business Forms, Inc.*, 713 F.2d 1272, 1288 (7th Cir.1983); *Bennett v. Berg*, 685 F.2d 1053, 1058–59 (8th Cir.1982), *aff'd en banc*, 710 F.2d 1361 (8th Cir.), *cert. denied*, — U.S. —, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983).[6]

---

*Swanson v. Wabash, Inc.*, 577 F.Supp. 1308, 1318–20 (N.D.Ill.1983) (Aspen, J.).

**4.** District court decisions in other circuits holding squarely that a plaintiff must prove "something more" or a racketeering injury include: *Margolis v. Republic National Bank*, 585 F.Supp. 595, 597 (S.D.N.Y.1984); *Bruns v. Ledbetter*, 583 F.Supp. 1050, 1056 (S.D.Cal.1984); *Furman v. Cirrito*, 578 F.Supp. 1535, 1539–41 (S.D.N.Y. 1984), *aff'd*, 741 F.2d 524 (2d Cir.1984); *Hudson v. Larouche*, 579 F.Supp. 623, 630 (S.D.N.Y. 1983); *Dakis v. Chapman*, 574 F.Supp. 757, 761 (N.D.Cal.1983); *Richardson v. Shearson/American Express Co.*, 573 F.Supp. 133, 137 (S.D.N.Y. 1983), *disavowed by author, Laterza v. American Broadcasting Co.*, 581 F.Supp. 408, 414 (S.D.N.Y. 1984); *In re Action Industries Tender Offer*, 572 F.Supp. 846, 852 (E.D.Va.1983); *Guerrero v. Katzen*, 571 F.Supp. 714, 718–19 (D.D.C.1983); *Bankers Trust Co. v. Feldesman*, 566 F.Supp. 1235, 1240–42 (S.D.N.Y.1983), *aff'd sub nom. Bankers Trust Co. v. Rhoades*, 741 F.2d 511 (2d Cir.1984); *Barker v. Underwriters at Lloyd's*, 564 F.Supp. 352, 358 (E.D.Mich.1983); *Harper v. New Japan Securities Int'l, Inc.*, 545 F.Supp. 1002, 1006–08 (C.D.Cal.1982); *Landmark Savings & Loan v. Loeb Rhoades, Hornblower & Co.*, 527 F.Supp. 206, 208–09 (E.D.Mich.1981).

District court decisions from other circuits holding squarely that a RICO plaintiff need not allege a racketeering injury include: *Minpeco S.A. v. Conticommodity Services, Inc.*, No. 81 Civ. 7619, slip op. at 2 (S.D.N.Y. March 28, 1984); *Estee Lauder, Inc. v. Harco Graphics, Inc.*, No. 82 Civ. 8188, slip op. at 3 (S.D.N.Y. March 21, 1984); *Wilcox v. Ho-Wing Sit*, 586 F.Supp. 561, 568–69 (N.D.Cal.1984); *In re Catanella*, 583 F.Supp. 1388, 1434–37 (E.D.Pa.1984); *Laterza v. American Broadcasting Co.*, 581 F.Supp. 408, 414 (S.D.N.Y.1984); *Charing Cross, Inc. v. Riggs Nat'l Bank*, No. 82–2207, slip op. at

10–14 (D.D.C. Oct. 7, 1983); *Slattery v. Costello*, 586 F.Supp. 162, 167 (D.D.C.1983); *Yancoski v. E.F. Hutton & Co.*, 581 F.Supp. 88, 96 & n. 19 (E.D.Pa.1983); *Kirschner v. Cable/Tel. Corp.*, 576 F.Supp. 234, 244 (E.D.Pa.1983); *In re Longhorn Securities Litigation*, 573 F.Supp. 255, 269–70 (W.D.Okla.1983); *Ralston v. Capper*, 569 F.Supp. 1575, 1580 (E.D.Mich.1983); *Mauriber v. Shearson/American Express, Inc.*, 567 F.Supp. 1231, 1240–41 (S.D.N.Y.1983); *Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*, 567 F.Supp. 1146, 1156–57 (D.N.J.1983), *aff'd in part and rev'd in part, both on other grounds*, 742 F.2d 786 (3d Cir.1984); *Eisenberg v. Gagnon*, 564 F.Supp. 1347, 1352–53 (E.D.Pa.1983); *Windsor Associates, Inc. v. Greenfeld*, 564 F.Supp. 273, 278–79 (D.Md.1983).

**5.** The panel in *Furman v. Cirrito* explained that the three panels had tentatively reached conflicting results on the issue, and a request for en banc consideration of the other cases was denied. 741 F.2d at 525. Although the members of the panel in *Furman* disagreed with the other decisions, they felt compelled in light of the denial of en banc consideration, to follow *Sedima* and *Bankers Trust*.

**6.** The Eighth Circuit position has been clouded by *Alexander Grant & Co. v. Tiffany Industries*, 742 F.2d 408 (8th Cir.1984), which rejects *Sedima* as inconsistent with *Bennett v. Berg*, but finds the racketeering injury requirement of *Bankers Trust* consistent with its own decision. *Alexander Grant & Co.*, 742 F.2d at 411 n. 7, 413. It is not entirely clear to us how the *Alexander Grant* court distinguishes between the necessity of pleading a racketeering injury as here defined and the necessity of alleging the existence of an enterprise in order to make out a violation of section 1962(c). *Compare id. with supra* at 387.

Courts on both sides of the racketeering injury dispute have claimed that they are merely following the "plain" meaning of section 1964(c). *Compare Bankers Trust Co. v. Rhoades, supra,* 741 F.2d at 517 (plain meaning requires a distinct RICO injury), *with Furman v. Cirrito, supra,* 741 F.2d at 530 (language is clear and does not require racketeering injury). We therefore suspect that we shall have to do more than stare at the language of section 1964(c) to decide this issue.

The initial hurdle for proponents of the racketeering injury is merely to define it, for "a racketeering enterprise injury is a slippery concept whose definition has eluded even those courts professing to recognize it," *Alexander Grant & Co. v. Tiffany Industries, supra,* 742 F.2d at 413. Neither the district court nor the defendants in their brief have made any effort to define the requirement, but they are not alone in this respect. Many district courts have imposed on RICO plaintiffs a racketeering injury requirement without explaining what the requirement is. *See, e.g., Hudson v. Larouche,* 579 F.Supp. 623, 630 (S.D.N.Y.1983); *Furman v. Cirrito,* 578 F.Supp. 1535, 1539–41 (S.D.N.Y.1984), *aff'd,* 741 F.2d 524 (2d Cir.1984); *King v. Lasher,* 572 F.Supp. 1377, 1382 (S.D.N.Y.1983); *Guerrero v. Katzen,* 571 F.Supp. 714, 718–19 (D.D.C.1983); *Barker v. Underwriters at Lloyd's,* 564 F.Supp. 352, 358 (E.D.Mich. 1983). Those district courts which have rejected a racketeering injury requirement have often remarked on this lack of explanation and the difficulty of definition as major reasons for rejecting it. *E.g., In re Catanella,* 583 F.Supp. 1388, 1436–37 (E.D. Pa.1984).

Instead of defining a racketeering enterprise injury, at least two district courts have refused to do so, insisting only that they would know a racketeering enterprise injury when they saw one. *Willamette Savings & Loan v. Blake & Neal Finance Co.,* 577 F.Supp. 1415, 1430 (D.Ore.1984) (citing *Jacobellis v. Ohio,* 378 U.S. 184, 197, 84 S.Ct. 1676, 1683, 12 L.Ed.2d 793 (1964) (Stewart, J., concurring)); *Waste Recovery Corp. v. Mahler,* 566 F.Supp. 1466, 1468–69 (S.D.N.Y.1983) (citing *Jacobellis v. Ohio, supra*).

The Second Circuit's recent trilogy of decisions represents the most comprehensive effort to date to define and justify the racketeering injury requirement, and we shall deal with that definition here. As we shall explain in more detail below, the Second Circuit's new definition of the racketeering injury requirement appears to be essentially an amalgamation of proposed limits on RICO which we rejected in *Schacht v. Brown, supra,* as contrary to the language and purpose of RICO. We therefore view *Schacht* as controlling in this case; we could not follow the Second Circuit without essentially overruling *Schacht.*

We must examine in some detail both the precise holdings and the mode of statutory interpretation adopted in *Schacht.* The plaintiffs there alleged that the defendants had engaged in an elaborate fraudulent scheme involving the reorganization of an insolvent insurance company. According to the complaint, the defendants had defrauded the state director of insurance by concealing the extent of the insolvency and by drawing away the company's more profitable business for their own benefit through a reorganization scheme. The defendants allegedly convinced the state director to permit the insolvent company to continue writing unprofitable insurance, thus leading to the further dissipation of the company's remaining assets. 711 F.2d at 1345–46. The company's losses from the fraudulent scheme were allegedly substantial enough to have injured the company's policyholders and creditors in addition to its shareholders. 711 F.2d at 1348–49.

This court upheld the RICO counts in *Schacht* against numerous challenges. The defendants' primary attack was that Congress did not intend to apply RICO to "garden variety" business fraud or securities cases. Our treatment of that challenge in *Schacht* sets the tone for our analysis of RICO statutory issues here. We said there:

We agree that the civil sanctions provided under RICO are dramatic, and will have a vast impact upon the federal-state division of substantive responsibility for redressing illegal conduct, but, like most courts who have considered this issue, we believe that such dramatic consequences are necessary incidents of the deliberately broad swath Congress chose to cut in order to reach the evil it sought; we are therefore without authority to restrict the application of the statute.

711 F.2d at 1353. Our approach to RICO in *Schacht* was based heavily on the Supreme Court's opinion in *United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), where the Court said:

[T]he language of the statute and its legislative history indicate that Congress was well aware that it was entering a new domain of federal involvement through the enactment of this measure. Indeed, the very purpose of the Organized Crime Control Act of 1970 was to enable the Federal Government to address a large and seemingly neglected problem. The view was that existing law, state and federal, was not adequate to address the problem, which was of national dimensions. That Congress included within the definition of racketeering activities a number of state crimes strongly indicates that RICO criminalized conduct that was also criminal under state law, at least when the requisite elements of a RICO offense are present. As the hearings and legislative debates reveal, Congress was well aware of the fear that RICO would "mov[e] large substantive areas formerly totally within the police power of the State into the Federal realm." In the face of these objections, Congress nonetheless proceeded to enact the measure, knowing that it would alter somewhat the role of the Federal Government in the war against organized crime and that the alteration would entail prosecutions involving acts of racketeering that are also crimes under state law.

There is no argument that Congress acted beyond its power in so doing. That being the case, the courts are without authority to restrict the application of the statute.

452 U.S. at 586–87, 101 S.Ct. at 2530–31 (citations omitted).

It is true that the legislative history includes relatively little material on RICO's private civil remedy, *see Sedima, S.P.R.L. v. Imrex Co., supra,* 741 F.2d at 492 ("clanging silence of the legislative history"), but it is also clear that Congress deliberately chose the very broad language of RICO's provisions. Both the proponents and the opponents of RICO recognized the extraordinary breadth of its terms.[7] The opponents argued that the breadth of the statute might chill civil liberties, and the proponents of RICO defended the broad terms on the grounds that narrower terms would provide loopholes through which the primary targets of RICO might escape. Indeed, the unifying thread of RICO's legislative development was a desire to avoid creating loopholes for clever defendants and their lawyers. "In short, Congress chose to provide civil remedies for an enormous variety of conduct, balancing the need to redress a broad social ill against the virtues of tight, but possibly overly astringent, legislative draftsmanship." *Schacht,* 711 F.2d at 1354–55. As we said more recently in response to a similar challenge:

But Congress deliberately cast the net of liability wide, being more concerned to avoid opening loopholes through which the minions of organized crime might crawl to freedom than to avoid making garden-variety frauds actionable in federal treble-damage proceedings—the price of eliminating all possible loopholes.

*Sutliff, Inc. v. Donovan Cos., supra,* 727 F.2d at 654. *See Moss v. Morgan Stanley, Inc., supra,* 719 F.2d at 21 (it is not the

---

7. The court in *Sedima* noted the dangers of deriving legislative intent from parades of horrors in opponents' speeches, 741 F.2d at 490 n. 22, but RICO's proponents also recognized the broad scope and the potential for unexpected applications.

judiciary's role to reassess Congress's balance of costs and benefits of RICO).

In addition, even if Congress had meant to leave the door open to narrower judicial interpretations of the statute, we said in Schacht that many of the provisions of RICO are so broad that "there is simply no legitimate principled criterion" for accomplishing that task. 711 F.2d at 1356. For example, since Congress itself rejected any attempt to employ the concept of "organized crime" in any colloquial sense in the language of RICO, the courts have thoroughly repudiated the contention that the civil provisions of RICO apply only to organized crime. See Schacht, supra, 711 F.2d at 1353–54; Alcorn County, supra, 731 F.2d at 1167; Moss v. Morgan Stanley, Inc., supra, 719 F.2d at 21 & n. 17; Bennett v. Berg, supra, 685 F.2d at 1063; Cenco, Inc. v. Seidman & Seidman, 686 F.2d 449, 457 (7th Cir.), cert. denied, 459 U.S. 880, 103 S.Ct. 177, 74 L.Ed.2d 145 (1982). And without reviving the discredited "organized crime" approach, the other deliberately broad terms of RICO, such as "person," "enterprise," "conduct" and "participate," offer few toeholds for courts seeking to narrow RICO's application.

The defendants in Schacht argued, as do the defendants here, that the plaintiffs had not alleged the proper type of injury for a RICO claim. We considered and rejected several variations on the theme. First, defendants argued, based on a loose analogy to the antitrust laws, that RICO claims are limited to claims for "competitive" injuries. See North Barrington Development, Inc.

v. Fanslow, 547 F.Supp. 207, 211 (N.D.Ill. 1980); Note, Reading the "Enterprise" Element Back Into Rico: Sections 1962 and 1964(c), 76 Nw.U.L.Rev. 100, 126–28 (1981). We rejected that argument. 711 F.2d at 1356–58. See also Bennett v. Berg, supra, 685 F.2d at 1058–59 (rejecting competitive injury requirement); Bunker Ramo Corp. v. United Business Forms, Inc., supra, 713 F.2d at 1287–88 (same).

Although there can be little doubt that criminal infiltration of businesses and injury to free competition in the marketplace were major concerns of Congress in enacting RICO, it is also clear that Congress's concerns extended much farther. United States v. Turkette, supra, 452 U.S. at 590–91, 101 S.Ct. at 2532–33. We agree that a business competitor harmed by infiltration or by other effects of racketeering might well be able to state a claim under RICO by alleging a "competitive" injury. See Addis v. Moser, No. 83 C 6118, slip op. at 14 & n. 9 (N.D.Ill. Feb. 15, 1984); Landmark Savings & Loan v. Loeb Rhoades, Hornblower & Co., 527 F.Supp. 206, 208–09 (E.D.Mich. 1981) (competitive injury could in some cases be cognizable under RICO). While a competitive injury might be sufficient to sustain a RICO claim, a competitive injury is, under Schacht and Bennett v. Berg, not necessary to state a RICO claim. For a thorough, recent discussion of the competitive injury requirement and relevant legislative history, see In re Catanella, 583 F.Supp. 1388, 1431–34 (E.D.Pa.1984).[8]

Schacht also rejected the argument that civil RICO claims should be limited only to

---

**8.** Some courts have justified their construction of section 1964(c)'s "by reason of" language with an analogy to Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977), in which the Supreme Court held that an antitrust plaintiff must prove "antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." The analogy has limited usefulness. The central factor in Brunswick was that the plaintiffs claimed damages suffered by reason of increased competition. The Supreme Court recognized that such an award would be "inimical to the purposes" of the antitrust laws, 429 U.S. at 488, 97 S.Ct. at 697, and

would "divorce[ ] antitrust recovery from the purposes of the antitrust laws," id. at 487, 97 S.Ct. at 696. By contrast, taking RICO's terms at face value might extend RICO beyond its expressly contemplated applications, but it in no way undermines RICO's purposes. As the Supreme Court has said of RICO, "[t]he aim is to divest the association of the fruits of its ill-gotten gains." United States v. Turkette, supra, 452 U.S. at 585, 101 S.Ct. at 2530. Restrictive standing requirements analogous to those in antitrust laws would too often leave those gains in the hands of the RICO violators. See Schacht, supra, 711 F.2d at 1357–58; Bennett v. Berg, supra, 685 F.2d at 1059; In re Catanella, supra, 583 F.Supp. at 1433–34.

those who are *indirect* victims of racketeering activity. 711 F.2d at 1356–58. The defendants had argued that those parties directly victimized by the alleged fraud could seek other, pre-existing legal remedies, which Congress had not meant to supplant. RICO, they argued, should be limited to parties who were not themselves the victims of racketeering and who suffered consequential or remote injury from the racketeering. This argument, of course, was very closely related to the claim that civil RICO is limited to competitive injuries. We noted in *Schacht*, 711 F.2d at 1355–56, that Congress was well aware of existing criminal and civil provisions for racketeering activity, but that Congress viewed those remedies as inadequate in the face of organized crime. *See United States v. Turkette, supra,* 452 U.S. at 586–87, 101 S.Ct. at 2530–31. Congress enacted RICO in order to supplement, not supplant, the available remedies since it thought those remedies offered too little protection for the victims. As we said in *Schacht v. Brown,* "RICO was designed to protect *direct,* and not just second-order, victims of organized crime infiltration." 711 F.2d at 1358.

Limiting civil RICO recoveries to indirect victims would produce odd consequences and, in some cases of RICO violations, would prevent civil recoveries altogether. Consider, for example, a small business subjected to repeated extortionate demands for protection money.[9] The business would surely be the victim of racketeering activity as defined in section 1961. And the owner might well be able to show that the extortionists violated section 1962(c) by conducting the affairs of an enterprise through a pattern of racketeering activity. Yet, under an indirect injury requirement, the owner could not sue the extortionists under RICO; instead, RICO's provisions would be limited to indirect victims, if there were any, such as the extortionists' competitors.[10] *See also Mauriber v. Shearson/American Express, Inc.,* 567 F.Supp.

1231, 1240 (S.D.N.Y.1983) (example describing problems with indirect injury requirement). The Supreme Court recently explained that Congress enacted RICO primarily to attack the sources of organized crime's economic power. *Russello v. United States,* 464 U.S. 16, ——, 104 S.Ct. 296, 302–03, 78 L.Ed.2d 17 (1983). Congress, while concerned with infiltration of legitimate business, also had the broader purpose of separating racketeers from their profits. *Id.* An "indirect injury" requirement would contravene the statute and Congress's intent by preventing the direct victims of racketeering activity from suing under RICO to recover their "contributions" to the racketeers' profits.

Thus, in *Schacht* we rejected the argument that civil RICO actions are limited only to situations involving "organized crime," and we rejected several arguments in support of special RICO injury requirements because we found no basis for them in the language, purpose or legislative history of RICO. We recognized that RICO's language extends beyond those concerns which were the immediate focus of the legislation, but we also recognized that Congress was fully aware of the extraordinary breadth of the language. Even though Congress might not have fully contemplated all of the consequences or applications of those very broad terms, Congress nevertheless deliberately chose to use the broad terms to ensure that the criminal and civil provisions would be effective. Further, even if Congress had meant to invite the courts to limit the broad reach of RICO, it provided few if any textual pegs which could permit courts to develop reasoned, consistent and principled limits without simply redrafting the statute. If, for policy reasons, it appears to be the better course to restrict the scope of RICO, then Congress—not the courts—is the body to do it. 711 F.2d at 1353–56.

In a relatively brief section of the opinion in *Schacht* captioned "Injury 'By Reason of' A § 1962(c) Violation," we addressed an

---

**9.** This hypothetical is drawn from *In re Catanella, supra,* 583 F.Supp. at 1433–34.

**10.** We suspect that competing extortionists would be unlikely to sue under RICO.

argument couched in terms similar to defendants' argument in this case. Without deciding whether a racketeering injury requirement should be imposed, and also without defining such a requirement, we concluded that any such requirement had been satisfied by the allegations of injuries resulting from the insurance company's continued operation as procured by the predicate fraud offenses. 711 F.2d at 1358–59. As noted, defining the racketeering injury requirement has been the primary hurdle for its proponents. The appellants' briefs in *Schacht* offered no useful definition of the asserted requirement other than competitive injury, and they acknowledged the ambiguity of the requirement as developed by the courts up to that time. Since *Schacht* was decided, the debate has continued, and the Second Circuit's recent trilogy offers the most comprehensive effort to date to define the racketeering injury requirement. Our discussion of the requirement in *Schacht*, 711 F.2d at 1358–59, has thus been outdated by courts' further development of the concept.[11] Upon close examination, however, the Second Circuit's proposed definition appears to be only a composite of the various proposed standing or injury limits rejected in *Schacht*. The controlling portions of the *Schacht* opinion are therefore those discussing the proposed competitive and indirect injury requirements and the application of RICO to business frauds.

We now turn to the Second Circuit's recent cases on the racketeering injury requirement. Although the contours of the Second Circuit's racketeering injury are not yet entirely clear, the Second Circuit's decisions conflict with our decision in *Schacht v. Brown*, and we decline to follow them.

The lead case in the trilogy is *Sedima, S.P.R.L. v. Imrex Co.*, 741 F.2d 482 (2d Cir.1984), *cert. granted*, — U.S. —, 105 S.Ct. 901, 83 L.Ed.2d 917 (1985). The plaintiff and defendants in that case had entered into a joint venture for the export of goods to Europe. The plaintiff alleged that the defendants defrauded it by preparing purchase orders, invoices and credit memoranda that they knew falsely overstated purchase prices, attendant costs and shipping and financing charges. 741 F.2d at 484. The complaint included three RICO counts based on 18 U.S.C. § 1962(c) and (d). The district court dismissed the RICO counts on the ground that the plaintiff had failed to allege any injury that was something more than or different from the injuries resulting from the predicate acts of mail and wire fraud. In a lengthy opinion by Judge Oakes, with Judge Cardamone dissenting, the Second Circuit affirmed the dismissal of the RICO counts because the plaintiff had not alleged a "racketeering injury." 741 F.2d at 495–96.[12]

The majority in *Sedima* noted that organized crime was the primary target of RICO and expressed its dismay at the application of RICO to many "respected and legitimate" businesses. The majority concluded that the application of RICO beyond its original stated purposes showed that the statute was "ambiguous," 741 F.2d at 487–88, and then undertook a thorough examination of RICO's legislative history.[13] The majority's review of the history shows convincingly that the private civil RICO provisions of section 1964(c) received relatively little attention from Congress in the enactment of the omnibus Organized Crime Control Act. The issue is what conclusions

---

11. That portion of the *Schacht* opinion has been the subject of widely varying interpretations. *See In re Catanella, supra*, 583 F.Supp. at 1435 n. 68, and cases cited therein.

12. In *Sedima* the Second Circuit also held that before a civil RICO action may be brought, "there must be a 'violation,' that is, criminal convictions on the underlying predicate offenses." 741 F.2d at 503. That holding conflicts with our decision in *Bunker Ramo Corp. v.*

*United Business Forms, Inc.*, 713 F.2d 1272, 1286–87 (7th Cir.1983). The issue is not presented in this appeal.

13. In *Schacht, supra*, we concluded that while RICO's terms are very broad, the terms in dispute there were not ambiguous. 711 F.2d at 1353–56. We discuss below the appropriate role for courts when dealing with deliberately broad, as opposed to ambiguous, statutory terms.

should be drawn from that fact. The *Sedima* court said:

> The most important and evident conclusion to be drawn from the legislative history is that the Congress was not aware of the possible implications of section 1964(c). If Congress had intended to provide a federal forum for plaintiffs for so many common law wrongs, it would at least have discussed it. If Congress had intended to provide an alternate and more attractive scheme for private parties to remedy violations of the securities laws—involving decades of statutes, regulations, commentaries, and jurisprudence—it would at least have mentioned it. The House Judiciary Committee, which authored the provision, would at least have mentioned the amendment to the full House as a major change in its report had there been any inkling of its possible implications.

741 F.2d at 492. The court then discussed the various "standing" barriers that courts have sought to erect against civil RICO claims and acknowledged the complete lack of consensus on civil RICO's requirements. The *Sedima* majority focused its consideration on the "by reason of a violation of section 1962" language in section 1964(c) and endorsed some form of racketeering injury requirement. The majority discussed the antitrust analogy relied on by some courts in imposing a competitive injury requirement. The court concluded that Congress did not intend to import all of the concepts of antitrust standing into civil RICO actions, but it said "there is nothing in the legislative history which suggests that Congress did not intend to create *analogous* standing barriers to RICO by using the 'by reason of' language." 741 F.2d at 495.

The majority then attempted to define a racketeering injury. In doing so, it focused on the importance of organized crime in congressional consideration of RICO. In the key passage defining a racketeering injury, the court said:

> RICO was not enacted merely because criminals break laws, but because mob-

sters, either through the infiltration of legitimate enterprises or through the activities of illegitimate enterprises, cause systemic harm to competition and the market, and thereby injure investors and competitors. It was to help solve this problem that Congress added RICO to the arsenal of weapons used to fight organized crime. It is only when injury caused by this kind of harm can be shown, therefore, that we believe that Congress intended that standing to sue civilly should be granted.

741 F.2d at 495–96. Finally, the court also said that the plaintiff must "show injury different in kind from that occurring as a result of the predicate acts themselves, or not simply caused by the predicate acts, but also caused by an activity which RICO was designed to deter." 741 F.2d at 496.

On the basis of these statements, it appears that *Sedima* has revived the discredited "organized crime nexus" requirement without quite saying so. *Cf. Alexander Grant & Co. v. Tiffany Industries,* 742 F.2d 408, 413 (8th Cir.1984) (*Sedima* holds that "section 1964(c) requires that the injury result from mobster activity or the efforts of organized crime"). The passage defining racketeering injury refers to mobsters and organized crime, 741 F.2d at 495–96, and the rest of the opinion repeatedly emphasizes the references in the legislative history to mobsters, racketeers and particular organized criminal groups. In addition, the *Sedima* panel professed its shock and dismay at the fact that RICO allegations have labeled as racketeers "such respected and legitimate 'enterprises' as the American Express Company, E.F. Hutton & Co., Lloyd's of London, Bear Stearns & Co., and Merrill Lynch." 741 F.2d at 487.

Of course, the criminal application of RICO has never been limited to "mobsters" or "organized crime." And on the civil side, every circuit that has considered the issue, including the Second, has expressly rejected the notion that "organized crime," in any colloquial sense of the phrase, must

be involved in order for RICO to be violated. *See supra* at 391.[14]

In *Schacht*, after we rejected the contention that RICO was meant to apply only to "organized crime," we disapproved the competitive and indirect injury arguments in part because there seemed to be no way to impose them without reviving the "organized crime" requirement. 711 F.2d at 1356. We said that we did not "wish that limitation to be revived under the guise of determining the kinds of activity covered by RICO." In view of the *Sedima* court's repeated discussion of organized crime and "mobsters," and the phrasing of the racketeering injury requirement, that seems to be precisely what the Second Circuit has done in *Sedima. See Sedima*, 741 F.2d at 509–10 (Cardamone, J., dissenting) (racketeering injury requirement is only a euphemism for an organized crime nexus requirement); *Alexander Grant & Co., supra*, 742 F.2d at 413 (finding *Sedima* imposes a requirement of mobster activity or organized crime involvement for racketeering injury). *Cf. Moss v. Morgan Stanley, Inc., supra*, 719 F.2d at 21 (2d Cir.) (rejecting organized crime nexus requirement). *Sedima* accurately describes Congress's central purposes in passing RICO, but the application of RICO has never been limited to those purposes.

*Sedima* also blended elements of competitive injury and indirect injury into its racketeering injury requirement. The opinion talks not only about mobsters but also about "systemic harm to competition and the market," which thereby injures "investors and competitors." 741 F.2d at 496. The *Sedima* court said it was not importing every detail of the standing requirements from antitrust law; for example, it said that an actual anticompetitive effect need not be proved if the injury were of the type which would ordinarily threaten competition. *Id.* at 495–96 & n. 41. However, to the extent that *Sedima* limits civil RICO recoveries to even a general type of competitive injuries rather than strictly to injuries compensable under antitrust law, *Schacht* still rejected that argument in this circuit. 711 F.2d at 1356–58.

Further, to the extent that *Sedima* closes the civil RICO door except to investors injured by mobsters' infiltration of legitimate business or by systemic harm to competition or to the market, that limitation again seems indistinguishable from the indirect injury requirement rejected in *Schacht*. 711 F.2d at 1356–58. As we said there, "RICO was designed to protect *direct*, and not just second-order, victims of organized crime infiltration." 711 F.2d at 1358. Where racketeers violate section 1962 and indirectly injure investors, we do not doubt that RICO may offer investors a civil remedy. But we rejected in *Schacht* any effort to limit RICO to such indirect victims.

*Sedima* must be read together with the Second Circuit's decision in *Bankers Trust Co. v. Rhoades, supra*, decided the day after *Sedima*. We must consider whether *Bankers Trust* might offer an additional

---

**14.** Moreover, the white-collar crime alleged in some RICO complaints against "legitimate" businesses is in some ways at least as disturbing as the bringing of RICO claims against "legitimate and respected" defendants. For example, the facts alleged in *Bennett v. Berg, supra*, 685 F.2d at 1056–57, decided by the Eighth Circuit, illustrate concerted white-collar criminal conduct of a type at the core of Congress' concern in enacting RICO. There the defendants included various businessmen, respected lawyers and accountants, and a well-known insurance company. The defendants were alleged to have concocted an elaborate fraudulent scheme which had induced elderly people to invest most of their assets in a retirement village which the defendants, through fraudulent self-dealing and mismanagement, then took to the brink of

bankruptcy, leaving the elderly people with neither their assets nor the "life care" they had bargained for. As Judge Pratt said in *Furman v. Cirrito, supra*, Congress

> provided no exception for businessmen, for white collar workers, for bankers, or for stockbrokers. If the conduct of such people can sometimes fairly be characterized as "garden variety fraud," we can only conclude that by the RICO statute Congress has provided an additional means to weed that "garden" of its fraud. It seems almost too obvious to require statement, but fraud is fraud, whether it is committed by a hit man for organized crime or by the president of a Wall Street brokerage firm.

741 F.2d at 529.

approach to a racketeering injury requirement not already foreclosed in this circuit by *Schacht* and other decisions. We conclude that while *Bankers Trust* differs from *Sedima* in significant ways, the *Bankers Trust* approach to racketeering injury also conflicts with the law of this circuit. *But cf. Alexander Grant & Co., supra,* 742 F.2d at 413 (rejecting *Sedima* for imposing organized crime requirement in conflict with *Bennett v. Berg, supra,* but finding its own decision consistent with *Bankers Trust*).

In *Bankers Trust*, the plaintiff was a creditor who alleged that the defendants had, over a nine year period, engaged in a pattern of bankruptcy fraud by shuffling assets from one owner to another in order to prevent collection of a debt. The plaintiff also alleged that the defendants had, as part of the same effort to prevent collection, instituted numerous frivolous lawsuits against plaintiff and had gone so far as to bribe a state judge in one action. Plaintiff alleged as injuries resulting from defendants' fraudulent conduct its inability to collect its debt and its legal fees incurred in the frivolous and corrupt lawsuits against it.

The Second Circuit held in *Bankers Trust* that the plaintiff had not stated a claim under RICO because it had not alleged an injury "by reason of a violation of section 1962." The court held that a violation of section 1962 occurs "only if there are present both (1) the pattern of racketeering activity, and (2) the use of that pattern to invest in, control, or conduct, a RICO enterprise. It is this confluence that constitutes the violation and, therefore, the confluence that must cause the proprietary injury." 741 F.2d at 516 (footnote omitted). The court said that it agreed with the panel in *Sedima* that a civil RICO plaintiff "must allege a proprietary injury caused by a RICO violation, not just one caused by some of the essential elements of a RICO violation." *Id.* (footnote omitted).

Applying this standard to the complaint in the case, the court concluded that the plaintiff had alleged only injuries caused by the predicate acts. The plaintiff's loss on the debt was caused by the defendants' bankruptcy fraud:

> The fact that later actions by the defendants may have prevented Bankers from remedying the injury caused it in 1976 does not mean that Bankers was injured by the "pattern" of the bankruptcy fraud and the later acts. Similarly, Bankers's forced expenditures of legal fees in connection with frivolous and corruptly conducted lawsuits occurred as a result of the defendants' distinct conduct in pursuing those lawsuits; Bankers's expenses would have been incurred regardless of any other predicate acts performed by the defendants.

741 F.2d at 518. The plaintiff in *Bankers Trust* had argued that there is no meaningful distinction between injury from the predicate acts and injury from the pattern of racketeering activity because a person injured by the predicate acts is *ipso facto* injured by the pattern. The court rejected that argument: "If a plaintiff's injury is that caused by the predicate acts themselves, he is injured regardless of whether or not there is a pattern; hence he cannot be said to be injured *by* the pattern, and the pattern cannot be said to be the but-for cause of the injury." 741 F.2d at 517.

*Bankers Trust* thus requires that each element of the section 1962 violation—including the pattern of racketeering activity *and* the role of the racketeering activity in the investment in, control of, or participation in an enterprise—contribute to cause the plaintiff's injury. *See* 741 F.2d at 516–17. A plaintiff's injury is compensable under RICO if and only if each element of the section 1962 violation is a but-for cause of the injury. *See* 741 F.2d at 517.

In *Bankers Trust* the court sought to illustrate its racketeering injury requirement with two examples which, the court suggested, would satisfy the requirement:

> Further, we can envision a number of circumstances in which injury could be attributable to a pattern but not to the individual predicate acts. For example, a

plaintiff who is victimized by a defendant enterprise's multiple acts of arson may thereafter be denied fire insurance as a result of his fire history; such a plaintiff whose property subsequently suffers innocent fire damage would be unable to obtain reimbursement for the damage, and his monetary loss would be the result of the pattern of predicate acts of the enterprise, rather than any of the individual acts. Or, a plaintiff might be forced to incur an unwanted debt or to take on an unwanted business 'partner because an enterprise has placed his business in jeopardy by using felonious means to cause a number of his customers to withhold their custom. In each instance, the plaintiff would have suffered an injury to his business or property by reason of the defendants' use of a RICO enterprise and a pattern of racketeering acts; the individual racketeering acts, however, could not be said to have caused the same injury.

741 F.2d at 517.

The court's illustrative examples are inconsistent with the rest of the opinion. In both examples the "racketeering injuries" would depend on the *pattern* of racketeering acts. But earlier in the opinion, the court insisted that all elements of a section 1962 violation, including the use ·of the pattern of racketeering activity to invest in, control or conduct an "enterprise," must be but-for causes of the injury. 741 F.2d at 516. The injuries in both examples would be entirely independent of the relationship between the racketeering acts and the enterprise which the defendant may have invested in, controlled or conducted. According to the rest of the opinion, therefore, the injuries in the examples would not, without more, be compensable under RICO.

*Bankers Trust* also appears to conflict with even the narrow view of racketeering injury adopted in *Sedima. See Alexander Grant & Co., supra.* As we have said, *Sedima* appears to be primarily concerned with·the activities of mobsters infiltrating legitimate businesses. To take another hypothetical example, suppose that "mob-

sters" threatened a number of shareholders in a small business and forced some of the shareholders to sell their interests in the business for a fraction of their true value. The "mobsters" might thereby acquire control of the business and operate it to the detriment of the remaining shareholders. Such conduct would appear to be at the core of the *Sedima* court's view of RICO. *See* 741 F.2d at 495–96. Yet according to the opinion in *Bankers Trust,* those shareholders who were threatened and forced to sell out would have no RICO claims because each would have been injured only by one predicate offense and not by the pattern of racketeering activity. Although it is not entirely clear, *Sedima* would appear to permit the selling shareholders to sue under RICO while *Bankers Trust* would not.

The *Bankers Trust* but-for test, applied to each element of the section 1962 violation, is contrary to the law of this circuit. In *Schacht* the plaintiffs' injuries resulted directly or indirectly from the defendants' alleged predicate fraud offenses. The primary victims of the defendants' scheme were the insurance company's creditors and policyholders. The alleged injuries resulted from the continued operation of the insolvent company, permission for which was procured by fraud. The plaintiffs clearly alleged a pattern of racketeering activity, but the pattern itself, apart from the individual acts, was not a but-for cause of the injuries. That is, the alleged injuries were no more than the sum of the injuries resulting from each fraud in the pattern or series. Under *Bankers Trust,* RICO provides no remedy for such injuries resulting from only the individual acts of racketeering or the sum of the acts, and the Second Circuit would find no RICO claim in the *Schacht* situation.

In addition, in several other cases we have upheld RICO claims where the only apparent injuries were those directly resulting from the predicate offenses. *Sutliff, Inc. v. Donovan Companies, supra,* 727 F.2d at 653–54; *Bunker Ramo Corp. v. United Business Forms, Inc., supra,*

713 F.2d at 1287–88. Other circuits have done the same. *Alcorn County v. U.S. Interstate Supplies, Inc., supra,* 731 F.2d at 1169 (5th Cir.); *Bennett v. Berg, supra,* 685 F.2d at 1058–59 (8th Cir.). We adhere to our previous views and those of other circuits in rejecting the *Bankers Trust* but-for test as applied to each element of the RICO violation.

■ In addition, we note that by restricting civil RICO to such indirect injuries as those discussed in the opinion's examples, and by denying RICO claims for the injuries resulting from the extended pattern of racketeering activity in that case itself, *Bankers Trust* reduces RICO's civil provisions to a trivial remedy, available in only a tiny fraction of RICO violations and dependent upon entirely fortuitous facts. As Judge Cardamone stated in his dissent in *Bankers Trust,* "If civil RICO does not provide a remedy on the facts of this totally outrageous case, it never will." 741 F.2d at 518.[15] The injuries for which RICO recovery was denied in *Bankers Trust* are not distinguishable in any meaningful way from those alleged in *Schacht, Sutliff, Inc. v. Donovan Companies, Bunker Ramo, Bennett v. Berg,* or *Alcorn County.* We adhere to our prior decisions and those of other circuits, and we reject the Second Circuit's imposition of a racketeering injury requirement. We conclude that a civil RICO plaintiff need not allege or prove injury beyond an injury to business or property resulting from the underlying acts of racketeering. Plaintiffs' allegations of injury in this case—excessive interest charges resulting from defendants' alleged fraudulent scheme to overstate the prime rate—satisfy the requirements of 18 U.S.C. § 1964(c).

This holding by no means renders superfluous the requirement in section 1964(c) that the plaintiff be injured "by reason of" a violation of section 1962. As we read this "by reason of" language, it simply imposes a proximate cause requirement on plaintiffs. The criminal conduct in violation of section 1962 must, directly or indirectly, have injured the plaintiff's business or property. A defendant who violates section 1962 is not liable for treble damages to everyone he might have injured by other conduct, nor is the defendant liable to those who have not been injured. This causation requirement might not be subtle, elegant or imaginative, but we believe it is based on a straightforward reading of the statute as Congress intended it to be read.

Finally, it may be useful to other courts if we focus briefly on what we perceive to be the underlying conflict between *Schacht* and *Sedima.* The root of the conflict seems to lie in the fact that, in RICO, we confront a statute which is not ambiguous but which is, above all, deliberately and extraordinarily broad. There are some ambiguities, to be sure, but the fact that RICO has been applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth. *Cf. Sedima, supra,* 741 F.2d at 487–88.

In defining the key terms of the statute, such as "person," "enterprise," and "racketeering activity," and in leaving undefined such broad terms as "conduct" and "participate," Congress deliberately chose to employ broad terms which would defy judicial confinement. Judge Oakes argues persuasively in *Sedima* that Congress might not have recognized all of the applications of the statute's broad language, particularly with respect to its civil provisions. Nevertheless, Congress still chose to employ that extraordinarily broad language in order to achieve its desired goals. In response to suggestions that the statute be more narrowly tailored to prevent unexpected applications, Congress clearly preferred breadth to precision. *Schacht, supra,* 711 F.2d at 1354–55; *Sutliff Inc., supra,* 727 F.2d at 654.

Even if Congress did not anticipate all of the consequences of RICO, the breadth of the statute, including the civil provisions, was the result of deliberate policy choices

---

**15.** It should be noted that the plaintiff in *Bankers Trust* had already proven a substantial portion of its allegations in other court proceedings.

on the part of Congress. In these circumstances, to impose special standing and injury requirements cannot in our view be defended as efforts to improve or polish a statute which was carelessly or inartfully drafted. RICO may be very broad, but there was nothing careless about its drafting. When Congress deliberately chooses to unleash such a broad statute on the nation, in the absence of constitutional prohibitions, complaints must be directed to Congress rather than to the courts. *See Schacht, supra,* 711 F.2d at 1356.

With respect to the case before us, it does not seem at all likely that Congress anticipated the application of civil RICO to improperly calculated interest charges by a commercial bank. And this may or may not be an appropriate subject for this federal statute. Nevertheless, it does not seem fitting for us to attempt to narrow the statute in ways which are nearly impossible to rationalize merely to exclude subjects of this kind. For to say that Congress did not anticipate this subject is not to say that Congress would have excluded it if the subject had been brought explicitly to its attention. Congress appears to have preferred a broad statute, even if overinclusion might result.

We do not believe we could limit RICO in the ways argued by the defendants or approved by the Second Circuit without disturbing the policy choices Congress has made. If the safety or stability of the Republic demanded, we might be justified in pursuing such an aggressive jurisprudence. But, particularly at the pleading stage, we seem to be dealing with much smaller stakes—legal fees and the sensibilities of prominent defendants alleged to be "racketeers." [16] Those stakes do not appear high enough to justify our rejecting Congress's choice of a statute that sweeps broadly.

## IV

Although the district court's dismissal of the complaint cannot be affirmed based on the elusive racketeering injury requirement, the defendants also contend that the dismissal is supported by other arguments not reached by the district court. These issues involve the necessary relationship between a person and an enterprise under 18 U.S.C. § 1962(c). The defendants correctly observe that we may reach these issues on appeal, at least where the arguments were presented to the district court and where the present record permits resolution of the issues.

*Defendant ANB:* ANB argues that it cannot be held liable under section 1962(c) in Count I because the requisite relationship between a person and an enterprise is not alleged. Plaintiffs offer two theories to support their RICO claims against ANB. First, they argue that ANB was both the "person" and the "enterprise" under section 1962(c) so that it conducted its own affairs through a pattern of racketeering activity. Second, they argue that ANB was the "person" conducting the affairs of its parent corporation, Heller International.

We turn first to the plaintiffs' contention that the same corporation may be both the liable "person" and the "enterprise" under section 1962(c). There is now a split in the circuits on this question. In *United States v. Hartley,* 678 F.2d 961, 987–90 (11th Cir. 1982), *cert. denied,* 459 U.S. 1170, 1183, 103 S.Ct. 815, 834, 74 L.Ed.2d 1014, 1027 (1983),

---

**16.** A number of courts dismayed by civil RICO have commented on the *in terrorem* settlement value that the threat of treble damages may add to spurious claims. After all, the line between fraud and mistake or misunderstanding can be a very fine one. It is, therefore, important that, in the further development of civil RICO, criminal fraud be clearly distinguished from less egregious conduct. On the other side of the scales, however, is another phenomenon with which lawyers and courts are also familiar. The delays, expense and uncertainties of litiga-tion often compel plaintiffs to settle completely valid claims for a mere fraction of their value. By adding to the settlement value of such valid claims in certain cases clearly involving criminal conduct, RICO may arguably promote more complete satisfaction of plaintiffs' claims without facilitating indefensible windfalls. And, in any event, the choice between simple compensatory damages and treble damages, with whatever effect such a choice might have on the caseload of the federal courts, is for Congress to make.

the Eleventh Circuit held that the corporation at the center of a fraudulent scheme could be both the person and the enterprise under section 1962(c). The Fourth Circuit held precisely the opposite in *United States v. Computer Sciences Corp.,* 689 F.2d 1181, 1190–91 (4th Cir.1982), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983).[17] Both cases were criminal RICO prosecutions, but the interpretations of 18 U.S.C. § 1962(c) are equally applicable to civil cases.

Discussion of whether the same corporation may be both the liable "person" and the "enterprise" under section 1962(c) has proceeded at two levels—the statutory language and the policies of RICO, and we shall consider both.

In terms of the language, it is clear that a corporation can satisfy the definitions of both "person" and "enterprise" under section 1961. The court in *Hartley* found that there was nothing in the statutory language to prevent the same corporation from being both the liable person and the enterprise. 678 F.2d at 988. By contrast, the Fourth Circuit in *Computer Sciences* concluded that " 'enterprise' was meant to refer to a being different from, not the same as or part of, the person whose behavior the act was designed to prohibit, and, failing that, to punish." 689 F.2d at 1190. Similarly, Judge Shadur concluded in *Parnes v. Heinold Commodities, Inc.,* 548 F.Supp. 20, 23–24 (N.D.Ill.1982), that section 1962(c) contemplates a separate "person" and "enterprise" because the enterprise may very well be the victim of the racketeering activity.

█ We are persuaded by the Fourth Circuit in *Computer Sciences* and by Judge Shadur in *Parnes* that section 1962(c) requires separate entities as the liable person and the enterprise which has

its affairs conducted through a pattern of racketeering activity. *See also Addis v. Moser,* No. 83 C 6118, slip op. at 9–11 (N.D.Ill. Feb. 15, 1984) (following *Parnes*). We do not doubt that a corporation may satisfy the section 1961 definitions of both "person" and "enterprise," as the court observed in *Hartley.* 678 F.2d at 988. But we focus our attention on the language in section 1962(c) requiring that the liable person be "employed by or associated with any enterprise" which affects interstate or foreign commerce. The use of the terms "employed by" and "associated with" appears to contemplate a person distinct from the enterprise. If Congress had meant to permit the same entity to be the liable person and the enterprise under section 1962(c), it would have required only a simple change in language to make that intention crystal clear. Also, we do not think the general principle of liberal interpretation of RICO can be used to stretch section 1962(c) to reach this situation in the face of the subsection's own limits. *See* Pub.L. 91–452, section 904, 84 Stat. 947. *Cf.* Blakey, *The Rico Civil Fraud Action in Context,* 58 NOTRE DAME LAW. 237, 324 n. 181 (1982) (approving of *Hartley* and disapproving of *Computer Sciences,* relying in part on liberal construction clause).

The court in *Hartley* supported its reading of section 1962(c) by also arguing that there is, for RICO purposes, no significant difference between a corporation and an "association in fact," *see* 18 U.S.C. § 1961(4). The court said there should be no practical difference between a complaint or indictment naming a corporation as the enterprise and one naming an association in fact as the enterprise, with the corporation as a member of the association. 678 F.2d at 989–90. We agree that a corporation and an association in fact can both satisfy

---

**17.** The Eighth Circuit appears to agree with the Fourth Circuit's conclusion that section 1962(c) requires an enterprise distinct from the person. *Bennett v. Berg, supra,* 685 F.2d at 1061–62 (affirming dismissal of count naming identical defendant and enterprise, but permitting amendment on remand), *Bennett v. Berg, supra,* 710 F.2d at 1364 & n. 4 (en banc); *id,* at 1365

(McMillian, J., dissenting in part); *Alexander Grant & Co. v. Tiffany Industries, supra,* 742 F.2d at 411 n. 6 (*Bennett v. Berg* held count insufficient precisely because of possibility of identity of enterprise and person). The Ninth Circuit also recently followed *Computer Sciences* on the point. *Rae v. Union Bank,* 725 F.2d 478, 481 (9th Cir.1984).

the "enterprise" requirement of section 1962(c). *See United States v. Turkette, supra,* 452 U.S. at 583, 101 S.Ct. at 2528. However, a corporation and an association in fact differ substantially with respect to the "person" element. Where persons associate "in fact" for criminal purposes, *see id.,* each person may be held liable under RICO for his, her or its participation in conducting the affairs of the association in fact through a pattern of racketeering activity. But the nebulous association in fact does not itself fall within the RICO definition of "person." We doubt that an "association in fact" can, as such, hold any interest in property or even be brought into court. In the association in fact situation, each participant in the enterprise may be a "person" liable under RICO, but the association itself cannot be. By contrast, a corporation obviously qualifies as a "person" under RICO and may be subject to RICO liability. And it is not obvious that the problem can be resolved by merely alleging that the corporation and its employees constitute an association in fact. For these reasons, we are unpersuaded by the comparison to an association in fact.[18]

Discussion of this person/enterprise problem under RICO can easily slip into a metaphysical or ontological style of discourse—after all, when is the person truly an entity "distinct" or "separate" from the enterprise? We are therefore reluctant to base our conclusion on the statutory language without also examining the relevant policies and potential consequences of our conclusion.

At the policy level of the dispute, there are several significant competing arguments. The Eleventh Circuit argued in *Hartley* that where the defendant corporation is the central figure in a criminal scheme, as it was in that case, Congress could not have meant to let the central perpetrator escape RICO liability while subjecting only the sidekicks to RICO's se-

vere penalties. 678 F.2d at 989. Similarly, plaintiffs here argue that Congress intended to make a "deep pocket" (in the person of the corporation) liable where corporate agents engage in a pattern of racketeering activity redounding to the benefit of the corporation. In *Parnes,* Judge Shadur argued that it would make little sense to hold a corporation liable under RICO for the misconduct of lower level employees, at least where it appears that the corporation is a passive instrument or even a victim of the racketeering activity. 548 F.Supp. at 23–24.

In our view, the RICO provisions have already taken into account these competing policies in different situations, and a careful parsing of section 1962 reveals a sensible balance among these policies. We find helpful here Professor Blakey's discussion in *The Rico Civil Fraud Action in Context, supra,* 58 NOTRE DAME LAW. at 307–25. Blakey points out that under the subsections of section 1962, the enterprise may play the various roles of victim, prize, instrument or perpetrator. The RICO liability of the enterprise should depend on the role played. In our view, the plaintiffs here and the court in *Hartley* are correct when they argue that the corporate enterprise should be liable where it is the perpetrator, or the central figure in the criminal scheme. In that situation, the corporate deep pocket should certainly be subject to RICO liability. At the same time, the defendants here and Judge Shadur in *Parnes* are surely correct in saying that the corporation-enterprise should not be liable when the corporation is itself the victim or target, or merely the passive instrument for the wrongdoing of others.

In our view, the tensions between these policies may be resolved sensibly and in accord with the language of section 1962 by reading subsection (c) together with subsection (a). As we read subsection (c),

---

**18.** We agree with the statement in *Hartley* concerning a corporation's responsibility for the acts of its agents. 678 F.2d at 988 n. 43. However, as we discuss below, those concerns are better addressed in terms of subsection (a) of section 1962. The court in *Hartley* was apparently dealing only with subsection (c). There are significant differences between the two subsections, and we must analyze closely the terms of these carefully drafted provisions.

the "enterprise" and the "person" must be distinct. However, a corporation-enterprise may be held liable under subsection (a) when the corporation is also a perpetrator.[19] As we parse subsection (a), a "person" (such as a corporation-enterprise) acts unlawfully if it receives income derived directly or indirectly from a pattern of racketeering activity in which the person has participated as a principal within the meaning of 18 U.S.C. § 2, and if the person uses the income in the establishment or *operation* of an enterprise affecting commerce. Subsection (a) does not contain any of the language in subsection (c) which suggests that the liable person and the enterprise must be separate. Under subsection (a), therefore, the liable person may be a corporation using the proceeds of a pattern of racketeering activity in its operations. This approach to subsection (a) thus makes the corporation-enterprise liable under RICO when the corporation is actually the direct or indirect beneficiary of the pattern of racketeering activity, but not when it is merely the victim, prize, or passive instrument of racketeering. This result is in accord with the primary purpose of RICO, which, after all, is to reach those who ultimately profit from racketeering, not those who are victimized by it.[20]

■ Applying this reading of subsection (c) to the complaint in this case, we conclude that ANB may not be held liable under section 1962(c) for conducting its own affairs through a pattern of racketeering activity. ANB might be held liable under section 1962(a) if it received the proceeds from the alleged racketeering activity and if it also could be held liable as a principal for those acts. However, plaintiffs here have abandoned any claim they might have stated under section 1962(a).[21]

Count I does not fail completely, however, for Count I also alleges that ANB violated section 1962(c) by conducting through a pattern of racketeering activity the affairs of its parent corporation, Heller International. That is a good allegation under section 1962(c). The subsection requires only some separate and distinct existence for the person and the enterprise, and a subsidiary corporation is certainly a legal entity distinct from its parent. Defendants do not challenge this point but argue only that the allegation does not adequately specify either the relationship between ANB and Heller International or the way in which ANB conducted or participated in Heller International's affairs. However, the complaint alleges that ANB is a wholly owned subsidiary of Heller International, and we think it virtually self-

19. Section 1962(a) provides:
It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and

do not confer, either in law or in fact, the power to elect one or more directors of the issuer.

20. Blakey argues that where the enterprise is an "instrument," it should be civilly, but not criminally, liable to third parties under RICO. 58 Notre Dame Law. at 323–25. We see no statutory grounds for such a distinction between civil and criminal liability. *Cf. Bernstein v. Idt Corp.*, 582 F.Supp. 1079, 1082–84 (D.Del.1984).

21. Paragraph 19 of the complaint appears in part to track the language of section 1962(a), alleging that ANB violated section 1962 by using in the operation of ANB's business income from a pattern of racketeering activity. In this court the plaintiffs have argued only section 1962(c). Defendants suggested in their brief that plaintiffs had abandoned the section 1962(a) allegation, and plaintiffs have not responded to the suggestion. Plaintiffs have therefore abandoned the point.

evident that a subsidiary acts on behalf of, and thus conducts the affairs of, its parent corporation.[22] We doubt that more detailed allegations on the subject would serve any useful purpose, and we see no reason to require them.

■ *Defendants Grayheck and Heller International:* Defendants also contend that the RICO claims against Grayheck and Heller International do not contain sufficiently specific allegations to withstand a motion to dismiss. In Count II of the amended complaint, plaintiffs seek to hold Grayheck and Heller International liable as persons conducting ANB's affairs through a pattern of racketeering activity. *See* 18 U.S.C. § 1962(c).[23] Defendants argue first that the complaint does not allege that Grayheck or Heller International acted with the requisite fraudulent intent. We reject this argument. The complaint is hardly a model of clarity on the intent issue, and it involves a lengthy trail of cross-references. However, at the end of the trail there are sufficient allegations of Grayheck's intent and Heller International's intent as embodied in its agents.

■ Defendants also raise a much broader point. They argue that the allegations in a civil RICO complaint must be as specific as a criminal bill of particulars and must establish probable cause to believe that the defendant committed the predicate racketeering offenses. Defendants rely on *Bache Halsey Stuart Shields, Inc. v. Tracy Collins Bank & Trust Co.*, 558 F.Supp. 1042, 1045–46 (D.Utah 1983), which squarely supports their position. That court stated in relevant part:

> For a private civil action to lie, the plaintiff must have been injured by a "pattern of racketeering activity." Such a pattern is established by a showing that a party has committed at least two "indictable" acts. 18 U.S.C. § 1961(1) (Supp.1982). A federal grand jury should return an indictment, only where there is probable cause or a reasonable probability that a crime has been committed. Thus, to properly plead an action under the treble damages provision of RICO, a party must allege two acts of "racketeering" with enough specificity to show there is probable cause the crimes were committed. An offense is not "indictable" merely because it is alleged. Rather, to be indictable it must be "well-founded" and based on probable cause.

558 F.Supp. at 1045 (citations omitted). The court also said:

> A private civil action under RICO is grounded upon the premise that a party has twice engaged in "racketeering activ-

**22.** As the Supreme Court said recently:

> A parent and its wholly owned subsidiary have a complete unity of interest. Their objectives are common, not disparate; their general corporate actions are guided or determined not by two separate corporate consciousnesses, but one. They are not unlike a multiple team of horses drawing a vehicle under the control of a single driver. With or without a formal "agreement," the subsidiary acts for the benefit of the parent, its sole shareholder.

*Copperweld Corp. v. Independence Tube Corp.*, — U.S. ——, 104 S.Ct. 2731, 2742, 81 L.Ed.2d 628 (1984). In *Copperweld* the Court held that a parent corporation and a wholly owned subsidiary are incapable of conspiring with one another for purposes of section 1 of the Sherman Act, 15 U.S.C. § 1. That holding does not extend to RICO's provisions in 18 U.S.C. § 1962(c) primarily because the Sherman Act is premised, as RICO is not, on the "basic distinction between concerted and independent action." *Copper-*

*weld*, 104 S.Ct. at 2740. The policy considerations discussed in *Copperweld*, 104 S.Ct. at 2740–44, therefore do not apply to RICO, which is targeted primarily at the profits from patterns of racketeering activity.

**23.** The claim against Heller International is premised on the theory that Heller International acted through Grayheck, who is an officer and director of ANB, and perhaps through other unidentified persons. Heller International is alleged to have thereby conducted or participated in the conduct of ANB's affairs through the alleged pattern of racketeering activity. The terms "conduct" and "participate" in section 1962(c) are quite broad, but it is not obvious to us that they extend to a parent corporation's involvement in racketeering activity solely through the actions of an agent of a subsidiary corporation. However, since the defendants have not raised the point and the district court did not pass on it, we shall not consider it in this appeal as a possible basis for affirming a portion of the dismissal.

ity." The Act defines "racketeering activity" as behavior "indictable" under specified provisions of the United States Code. Before a court can assess the merit of a plaintiff's treble damages claim it must determine whether there is probable cause to believe the named defendant committed the alleged predicate crimes. That determination is possible only if the factual basis of those "acts of racketeering" is set out with particularity. Thus, a factual statement similar to a bill of particulars is needed in pleadings that allege a violation of the RICO treble damages provision.

558 F.Supp. at 1045–46. *See also Taylor v. Bear Stearns & Co.*, 572 F.Supp. 667, 682–83 (N.D.Ga.1983) (complaint must show previous convictions or set out probable cause).

To establish its case at trial, a civil plaintiff must surely prove the acts of racketeering, but the district courts in *Bache Halsey* and *Taylor* appear to have moved that requirement up to the pleadings stage. For several reasons, we do not agree that such specificity is required *at the pleadings stage.*

First, a determination of probable cause in the criminal context ordinarily involves some evaluation of the reliability of specific evidence. Even the most specific allegations do not establish probable cause unless they are reliable. We are, to say the least, perplexed as to how a court might undertake such evaluations of reliability in deciding a motion to dismiss under Rule 12. *See Sedima, supra,* 741 F.2d at 501 & n. 56 (relationship between "probable cause" in complaint and plaintiff's burden at trial "remains something of a mystery").

With respect to *Bache Halsey*'s discussion of grand juries, it should be recalled that a grand jury has significant investigative powers and resources, including a broad subpoena power. Before it decides whether to indict a person, it has extensive opportunities to discover and evaluate relevant facts. It should be obvious that a civil plaintiff has no similar discovery rights until it files its complaint. Yet the approach of the district court in *Bache Halsey* appears to require a plaintiff to establish a case before any discovery is permitted. The *Bache Halsey* court argued that such specificity was needed in order to evaluate the merits of a claim and to distinguish between well-founded and frivolous claims. 558 F.Supp. at 1046. While the court's motives are admirable, its approach seems to us to be impractical. We see no grounds for demanding that a civil RICO plaintiff essentially plead evidence and prove the case in the complaint.[24]

Finally, we note that in our prior RICO decisions we have applied ordinary civil standards to pleadings in civil RICO cases. *E.g., Schacht v. Brown, supra,* 711 F.2d at 1352–53. We see no reason to depart from that practice.

It is possible that requiring private RICO plaintiffs to prove at trial the elements of a section 1962 violation beyond a reasonable doubt could address some of the legitimate concerns about unfair stigmatization of defendants as "racketeers" and other abuses of RICO's criminal dimensions through civil proceedings. *See, e.g., Sedima, supra,* 741 F.2d at 499. RICO liability must be based, after all, on findings of criminal conduct. RICO does not specify a standard of proof for use in civil RICO actions. In the courts, the appropriate standards of proof in the various forms of civil RICO actions are not yet firmly settled, and the relevant considerations are numerous. *See Sedima, supra,* 741 F.2d at 499–502 & n. 49; *id.* at 506–07 (Cardamone, J., dissenting); *United States v. Cappetto,* 502 F.2d 1351, 1357 (7th Cir.1974), *cert. denied,* 420 U.S. 925, 95 S.Ct. 1121, 43 L.Ed.2d 395 (1975); *Eaby v. Richmond,* 561 F.Supp. 131, 133–34 (E.D.Pa.1983); *State Farm Fire & Casualty Co. v. Estate of Caton,*

**24.** Some of the district court's language in *Bache Halsey* suggests that the probable cause standard might apply only in a final decision to grant relief after trial. *See* 558 F.Supp. at 1045–

**47.** However, the court relied on that standard to deny a party leave to amend its answer to include RICO counterclaims.

540 F.Supp. 673, 675–77 (N.D.Ind.1982); *Parnes v. Heinold Commodities, Inc.*, 487 F.Supp. 645, 647 (N.D.Ill.1980); *Farmers Bank v. Bell Mortgage Corp.*, 452 F.Supp. 1278, 1280 (D.Del.1978); Note, *Enforcing Criminal Laws Through Civil Proceedings: Section 1964 of the Organized Crime Control Act of 1970*, 53 Tex.L.Rev. 1055, 1062–64 & n. 52 (1975); Matz, *Determining the Standard of Proof in Lawsuits Brought Under RICO*, National Law Journal, Oct. 10, 1983, at 21, col. 1. *See also United States v. Spilotro*, 680 F.2d 612, 617–19 (9th Cir.1982) (interlocutory orders under 18 U.S.C. § 1963(b)). On the appropriate standard of proof in proceedings with both civil and criminal dimensions, *see generally Herman & MacLean v. Huddleston*, 459 U.S. 375, 387–91, 103 S.Ct. 683, 690–92, 74 L.Ed.2d 548 (1983); *Addington v. Texas*, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979); *United States v. Regan*, 232 U.S. 37, 48–49, 34 S.Ct. 213, 217, 58 L.Ed. 494 (1914).

There can be little doubt that Fed.R. Civ.P. 9(b), which requires that allegations of fraud specify "with particularity" the circumstances of the alleged fraud, applies to fraud allegations in civil RICO complaints. *See Moss v. Morgan Stanley, Inc.*, *supra*, 719 F.2d at 19. In this case, the complaint adequately specified the transactions, the content of the allegedly false representations, and the identities of those involved. In addition, the identification of the transactions and the description of the alleged scheme to defraud put defendants on fair notice of the time and place of the alleged false representations. *See Thornton v. Evans*, 692 F.2d 1064, 1082 & n. 41 (7th Cir.1982); *Tomera v. Galt*, 511 F.2d 504, 508 (7th Cir.1975). *See also McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 228–29 (1st Cir.1980); *Miscellaneous Service Workers v. Philco-Ford Corp.*, 661 F.2d 776, 782 (9th Cir.1981); *Felton v. Walston & Co.*, 508 F.2d 577, 581–82 (2d Cir. 1974). There would have been little point in requiring plaintiffs to expand the complaint by also identifying each notice which included an interest rate. The complaint here therefore satisfies Rule 9(b).

For the foregoing reasons, we affirm the district court's dismissal of the portion of Count I alleging that ANB conducted its own affairs through a pattern of racketeering activity. We reverse the remainder of the district court's dismissal of the complaint and remand for further proceedings not inconsistent with this opinion.