**PEOPLE OF the STATE OF ILLINOIS, ex rel., Neil F. HARTIGAN, and Illinois Department of Revenue, Plaintiffs,**

v.

**Brian K. FLISK, Defendant.**

**No. 87 C 6395.**

United States District Court, N.D. Illinois, E.D.

Dec. 8, 1988.

---

## MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

Plaintiffs bring their two count Second Amended Complaint under Sections 1964(c) and 1962(a) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. Section 1961 et. seq. Defendant is the Chairman of the Board of Metropolitan Petroleum Company, Inc. ("Metro") Metro is a retailer of gasoline. The complaint arises out of Defendant's alleged mailing of fraudulent tax returns to Plaintiff in connection with Metro's sale of gasoline. Defendant has moved to dismiss Plaintiff's Second Amended Complaint for failure to state a claim. For the reasons set forth below, the motion is granted.

### The Allegations of the Complaint

Plaintiff, Illinois Department of Revenue ("IDR"), administers and collects taxes under the Illinois Retailers' Occupation Tax Act, Illinois Revised Statutes Chapter 120, Paragraph 440 et seq., the Municipal Retailer's Occupation Tax Act, Illinois Revised Statutes Chapter 24, Paragraph 8–11–1 et seq. and the Regional Transportation Authority Retailers' Occupation Tax Act, Illinois Revised Statutes Chapter 111⅔, Paragraph 704.03. (Second Amend-

ed Complaint par. 2[1].) Defendant is the Chairman of the Board of Metro and is responsible for the day-to-day operations of Metro. (par. 3.) Ronald Buzil ("Buzil") is Vice–President and Comptroller of Metro. (par. 4.) Metro is "engaged in the business of retail sales of motor fuels, diesel fuel products and gasoline fuel products." (par. 5.) The activities of Metro affect interstate and foreign commerce. (par. 5.)

Under the above mentioned retail tax statutes, Metro is obligated to pay IDR a 7% sales tax on its gross sales. (par. 9.) In order to administer these taxes, Illinois law requires retailers, such as Metro, to "file monthly Retailers' Occupation Tax Returns with the [IDR] detailing, ... the retailers' gross receipts from retail sales made and tax due and collected upon those sales. The retailer is also required to remit the tax due and collected contemporaneous with his ... return." (par. 10.) Illinois statutes further require that the retailer complete, sign and certify as accurate these returns. (par. 12.)

From February 1985 to November 1986, "the Defendant operated and controlled ... [Metro]." (par. 13.) During this period Metro made sales of gasoline "at retail to the general public." (par. 14.) Accordingly, Metro was required to complete, and did complete the required tax returns. (par. 16.) The returns "were completed under the knowledge and direction of [Defendant] Flisk, signed by agents of [Metro] and returned to the [IDR] via the United States mail." (par. 16.)

Count I of the Second Amended Complaint deals with Metro's allegedly fraudulent retail tax returns due as a result of sales by Metro to Belt Railway of Chicago and is brought under RICO Section 1962(a). 18 U.S.C. Section 1962(a). In October of 1985 Defendant stated to Buzil "that he did not want to pay ... [tax] proceeds to the State of Illinois ... [Defendant] then instructed Buzil to change the books and records relating to [Belt Railway of Chicago's] tax accrual accounts." (par. 17.)

1. Further references to paragraphs of the Second Amended Complaint will simply include the abbreviation "par." and the appropriate number.

Due to the difficulty of changing these documents Buzil told Defendant that he would need additional help. Defendant "then directed Buzil to utilize office help and not to tell them what they were doing. The task took three (3) months and [Defendant] Flisk paid Buzil Three Thousand Dollars ($3,000.00) per month as consideration for falsifying the records." (par. 18.) Pursuant to this plan, Defendant knowingly failed to report or remit the Belt Railway of Chicago tax collections on 16 monthly tax returns of Metro which were mailed to the IDR. (par. 20.)

Count II of the Second Amended Complaint is also brought under RICO Section 1962(a). 18 U.S.C. Section 1962(a). This Count deals with similar fraudulent retail tax returns filed by Metro with respect to Metro's Evergreen Park retail gas service station. From February to October 1986, "Walter E. Heller and Associates ("Heller") loaned or had outstanding loans to [Metro]." (par. 19.) A condition of these loans required that Metro "submit sales reports on a daily basis from the [Evergreen Park] station." (par. 19.) When compared to these sales reports, the 9 monthly tax returns filed by Defendant from February to October 1986 with respect to the Evergreen Park Station show that the sales listed in the tax return are underreported "in the amount of $1,588,-978.63 resulting in unreported and uncollected taxes in the amount of $111,228.50." (par. 20.)

### Discussion

In considering Defendant's Motion to Dismiss, the allegations of the complaint are taken as true along with reasonable inferences therefrom in the light most favorable to the Plaintiff. *Powe v. City of Chicago*, 664 F.2d 639, 642 (7th Cir.1981). Plaintiff's complaint should not be dismissed "unless it appears beyond doubt

that the plaintiff is unable to prove any set of facts which would entitle the plaintiff to relief.... Nevertheless a plaintiff must allege sufficient facts to outline the cause of action, proof of which is essential to recovery." *Ellsworth v. City of Racine*, 774 F.2d 182, 184 (7th Cir.1985), (citations omitted), *cert. denied* 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986).

In order for the Plaintiff's complaint to withstand a motion to dismiss, Plaintiff must allege all the required elements of a RICO civil suit.[2] First, to bring a civil RICO suit, Plaintiff must fall within the purview of Section 1964(c).[3] RICO Section 1964(c) provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the costs of the suit, including a reasonable attorney's fee." Thus, RICO Section 1964(c) establishes a causation requirement between Plaintiff's injury and the Defendant's conduct under RICO Section 1962 for civil RICO suits.

RICO Section 1962 lists all the activities which are proscribed under the statute. All the subsections of RICO Section 1962 utilize the terms "pattern of racketeering activity", "person", and "entity" in defining what activities are proscribed. These terms are in turn defined in RICO Section 1961. A " 'pattern of racketeering activity' requires at least two acts of racketeering activity ... within ten years...." RICO Section 1961(5). Plaintiff's Second Amended Complaint relies on mail fraud as the racketeering activity underlying this suit. An indictable act under the mail fraud statute is included in the definition of "racketeering activity" contained in RICO Section 1961(1). A " 'person' includes any individual or entity capable of holding a legal or beneficial interest in property." RICO Sec-

---

2. The subsequent discussion of the elements of a RICO civil suit is based on the particular RICO statutory provisions cited in the body of the opinion and *Haroco v. American Nat. B. & T. Co. of Chicago*, 747 F.2d 384, 386 (7th Cir.1984), *aff'd* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985).

3. The RICO statute is found at 18 U.S.C. Section 1961, et seq. All subsequent references to RICO will include the Section numbers only.

tion 1961(3). An " 'enterprise' includes any individual, partnership, corporation, association or other legal entity and any union or group of individuals associated in fact although not a legal entity...." RICO Section 1961(4).

In addition to including allegations with respect to these generalized requirements contained in all the RICO Section 1962 subsections, a Plaintiff must fall within the scope of the particular subsection as well. Each RICO Section 1962 subsection present a unique way in which the pattern of racketeering can give rise to liability. Under Section 1962(a) it is a person's use or investment of racketeering income in any enterprise affecting interstate or foreign commerce which is proscribed.[4] Section 1962(b) proscribes any person from acquiring or maintaining an interest in or control of any enterprise affecting interstate or foreign commerce.[5] Under Section 1962(c), a person is proscribed from conducting or participating in the affairs of an enterprise affecting interstate or foreign commerce through a pattern of racketeering activity.[6]

The different subsections of Section 1962 represent Congressional understanding that in the racketeering context an enterprise, particularly a corporate enterprise, "may play the various roles of victim, prize, instrument or perpetrator." *Haroco v. American Nat. B. & T. Co. of Chicago,* 747 F.2d 384, 401 (7th Cir.1984). Creating various subsections of liability which reflect this reality, comports with the "primary purpose of RICO ... [which] is to reach those who ultimately profit from racketeering, not those who are victimized by it." *Haroco,* 747 F.2d. at 402.

Defendant does not challenge Plaintiff's assertions in its Second Amended Complaint that he is a person and that Metro is an entity. Nor does he challenge Plaintiff's assertion that the 16 mailings in Count I and the 9 mailings in Count II constitute a pattern. Rather, Defendant's motion to dismiss argues that neither causation nor an indictable mail fraud offense is alleged in Plaintiff's Second Amended Complaint. First, Defendant argues that Plaintiff has not shown the requisite Section 1962(a) causal connection between Defendant's pattern of racketeering and Plaintiff's injury. Secondly, Defendant argues that tax fraud is not cognizable under the mail fraud statute, 18 U.S.C. Section 1341. Defendant states that mail fraud requires that the Plaintiff be asserting a property interest. Defendant then argues that the IDR does not have a property interest, either tangible or intangible, in the fraudulently withheld taxes. We will address both arguments in turn.

*Causation under RICO Section 1962(a)*

■ As mentioned above, RICO Section 1964(c) allows civil suits for RICO Section 1962 proscribed activity so long as Plaintiff is "injured ... by reason of a violation of section 1962 of this chapter...." The "by reason of" language in RICO Section 1964(c) has been held by the courts to require that a Plaintiff plead and prove that the Section 1962 activity proximately caused Plaintiff's injury. *Sedima, S.P.R. L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985); and *Haroco v. American Nat. B. & T. Co. of Chicago,* 747 F.2d 384, 387 (7th Cir.1984), *aff'd* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437

**4.** Section 1962(a) provides that: "[i]t shall be unlawful for any person who has received any income derived, directly or indirectly from a pattern of racketeering activity ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in or the activities of which affect, interstate or foreign commerce...." 18 U.S.C. Section 1962(a).

**5.** RICO Section 1962(b) provides that "[i]t shall be unlawful for any person through a pattern of racketeering activity ... to acquire or maintain,

directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. Section 1962(b).

**6.** RICO Section 1962(c) provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity...." 18 U.S.C. Section 1962(c).

(1985). As mentioned previously, Section 1962 is divided into subsections so as to penalize only the wrongdoer. Since each subsection of Section 1962 is different, the causation requirement of Section 1964(c) also plays out differently depending on which subsection of Section 1962 a Plaintiff relies on.

Courts have held that RICO Section 1962(c) requires that there be a causal connection between the RICO violation and the Plaintiff's injury. *Haroco*, 747 F.2d at 392; *Flood v. Waste Management, Inc.*, 87 C 4643 (N.D.Ill.1988) (Plunkett). Section 1962(c) is concerned with penalizing a person employed by an enterprise who has conducted the enterprise's affairs through a pattern of racketeering activity.[7] Had Plaintiff relied on RICO Section 1962(c), Plaintiff would simply have needed to show that Defendant's mail fraud caused Plaintiff's injury, i.e. Defendant's fraudulently depriving the IDR of tax dollars owed to it.

Courts have construed the causation requirement in Section 1962(a) somewhat differently from the Section 1962(c) causation requirement, however. Section 1962(a) is concerned with the use or investment of racketeering income.[8] Thus, Section 1964(c) requires that in a civil RICO suit brought under Section 1962(a), there must be a causal connection between Plaintiff's injury and Defendant's use or investment of the racketeering income in an enterprise engaged in interstate commerce. In a 1962(a) civil RICO suit, the Plaintiff's injury must be causally related to the Defendant's use or investment activity not to the racketeering activity as is required in Section 1962(c). *Flood*, 87 C 4643 (N.D.Ill. 1988) (Plunkett); *Heritage Ins. Co. v. First Nat. Bank of Cicero*, 629 F.Supp. 1412, 1417 (N.D.Ill.1986) (Getzendanner); *P.M.F. Services, Inc. v. Grady*, 681 F.Supp. 549 (N.D.Ill.1988) (Shadur); *But see Mid–State Fertilizer Co. v. Exchange Nat. Bank of Chicago*, 693 F.Supp. 666, 671 (N.D.Ill. 1988) (Hart) (includes string citations to both sides of this debate). As applied in this case, Plaintiff must allege that De-

fendant's use or investment of the wrongfully withheld tax dollars in Metro injured IDR.

Plaintiff's complaint does not allege that it has been injured by Defendant's use or investment of the unpaid tax dollars in Metro. Plaintiff, *in its brief*, says that it was injured by the use and investment activity because the unpaid tax dollars were used by the Defendant to pay Buzil and other employees of Metro to falsify Metro's books and records so as to support the false tax returns which Metro filed. (Plaintiff's Memorandum in Opposition, p. 4.) Plaintiff's *complaint*, however, does not include this allegation. On a Motion to Dismiss, the court may not " 'flesh out' the complaint by relying on the expanded statements in plaintiff's memoranda.... [Furthermore,] it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984) (citations omitted), *cert. denied* 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985). As Plaintiff's Second Amended Complaint does not allege a causal connection between Defendant's use or investment of the racketeering income in Metro and Plaintiff's loss of owed tax dollars, it must be dismissed. As it appears that Plaintiff may be able to amend his complaint to allege a violation of RICO Section 1962, however, Plaintiff will be given leave to amend.

*Tax Fraud as an Indictable Mail Fraud Offense*

■ As we are giving Plaintiffs the opportunity to amend their complaint, we will address the mail fraud issue which the parties briefed in connection with this Motion to Dismiss. As mentioned previously, RICO requires the civil plaintiff to allege a racketeering activity. The only racketeering activity which Plaintiff alleges in the Second Amended Complaint is mail fraud. Defendant argues that tax fraud is not an indictable offense under the mail fraud statute. If Defendant's argument is cor-

---

**7.** See page 192, footnote 6 of this opinion for full text of 1962(c).

**8.** See page 192, footnote 4 of this opinion for full text of Section 1962(a).

rect, Plaintiff would be required to allege another racketeering activity in order to amend his complaint. We, however, are unpersuaded by Defendant's argument.

In 1985, the Seventh Circuit allowed the Illinois Department of Revenue to sue a defendant for mailing false tax returns under RICO Section 1962(c). The racketeering activity in that case was mail fraud. *Illinois Department of Revenue v. Phillips*, 771 F.2d 312 (7th Cir.1985). Defendant argues that this case is no longer controlling because of footnotes in a subsequent Supreme Court and Seventh Circuit case.

In 1987, the Supreme Court determined that the mail fraud statute is only applicable when property rights are involved. *McNally v. U.S.*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). While the mail fraud statute may be used if tangible or intangible *property* rights are involved,[9] it cannot be used in a prosecution based on intangible rights such as the citizenry's right to good government or an employer's right to honest employees. *McNally v. U.S.*, 107 S.Ct. 2875; and *U.S. v. Gimbel*, 830 F.2d 621 (7th Cir.1987).

In 1987, the Seventh Circuit was called upon to apply the new *McNally* rule to assess an indictment in *U.S. v. Gimbel*, 830 F.2d 621 (7th Cir.1987). Gimbel had been indicted for developing a scheme to avoid U.S. Treasury Department reporting requirements under the Currency Transactions Reporting Act. "[T]he Currency Transactions Reporting Act required an institution to report daily transactions by a customer that, in the aggregate, exceeded $10,000." *Gimbel*, 830 F.2d at 624. Although Gimbel's indictment alleged a scheme to deprive the U.S. Treasury Department of information, it did not allege that the United States had been deprived of any property right. Accordingly, the Seventh Circuit concluded that the indictment did not state a mail fraud offense. *Gimbel*, 830 F.2d at 627.

The reporting requirements, however, were apparently utilized by the U.S. Treasury Department to determine if tax returns were accurate. In the course of determining that Gimbel's indictment was insufficient, the Seventh Circuit noted in a footnote that:

"We express no view as to whether a scheme to deprive the government of tax dollars can ever be cognizable under the mail fraud statute. *See McNally*, 483 U.S. —— n. 4, 107 S.Ct. at 2878 n. 4 (error to include tax fraud issues in mail fraud count); id. at —— n. 8, 107 S.Ct. at 2881 n. 8 (scheme must injure government in its role as 'property-holder')."

Based on this footnote, Defendant argues that *Illinois v. Phillips* is no longer binding on this court. Defendant argues that the government has no property interest, tangible or intangible, in taxes owed to it by taxpayers.

Defendant appears to be attempting to introduce a government versus proprietary functions analysis into the mail fraud statute when the Plaintiff is a governmental department. We note, however, that the footnotes on which Defendant relies are clearly dicta not holdings in these cases. Furthermore, the dicta was generated by cases dealing with federal not state governmental agencies. Also, the indictments in these cases were found to be based on intangible rights like the right to good government in *McNally* and the right to information in *Gimbel*. Here, on the other hand, Plaintiff wants tax dollars which it claims are due to it. We find that these footnotes are insufficient to overturn the clear Seventh Circuit precedent of *Illinois Department of Revenue v. Phillips* which allows Section 1962(c) civil RICO actions of the type sought to be brought in this case.

### Conclusion

For the reasons set forth above, Plaintiff's Second Amended Complaint is dismissed. Plaintiff is given thirty days from

---

9. *Carpenter v. U.S.*, 484 U.S. 19, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987) (Wall Street Journal reporter leaks of the contents of confidential column about stocks which affects market prices of the stocks to certain traders cognizable under mail fraud because Journal has property right in confidential business information).

the date of entry of this order to amend its complaint. If Plaintiff does not amend its complaint within this time period, the complaint will be dismissed with prejudice.