**Richard N. BOWMAN, Plaintiff,**

v.

**WESTERN AUTO SUPPLY COMPANY and John R. Leach, Defendants.**

No. 90–0765–CV–W–9.

United States District Court, W.D. Missouri, W.D.

Aug. 16, 1991.

David R. Morris, Shamberg, Johnson, Bergman & Morris, Chtd., Overland Park, Kan., for plaintiff.

Todd A. Johnson, Shughart, Thomson & Kilroy, P.C., Kansas City, Mo., for defendants.

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS

BARTLETT, District Judge.

Plaintiff Richard N. Bowman (Bowman) has filed a five-count Complaint against Western Auto Supply Company (Western Auto) and one of its employees, John R. Leach (Leach). Plaintiff asserts he was wrongfully discharged from employment with Western Auto for complaining about its alleged practice of double billing merchandise suppliers for advertising. Plaintiff contends that Western Auto employees "conspired to conduct a scheme and conducted a scheme known as 'double billing' or 'double dipping'" by which merchandise suppliers "were fraudulently billed for advertising and promotional services that were never provided by Western Auto." First Amended Complaint at ¶ 14.

In Count V, plaintiff asserts a common law wrongful discharge claim. In Counts I through IV, plaintiff alleges violations of 18 U.S.C. § 1962(a), (b), (c) and (d) of the Racketeer Influenced and Corrupt Organizations Act (RICO). RICO prohibits a person from employing a pattern of racketeering activity or from employing the proceeds derived from this activity so as to affect an interstate enterprise in one or more of three ways: 1) investing the income derived from a pattern of racketeering in the enterprise, § 1961(a); 2) acquiring or maintaining an interest in an enterprise through a pattern of racketeering, § 1962(b); and 3) conducting the affairs of an enterprise through a pattern of racketeering, § 1962(c). Also, § 1962(d) prohibits conspiring to violate subsection (a), (b) or (c).

Defendants seek dismissal of the Complaint pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure. Defendants argue plaintiff's RICO claims should be dis-

missed because: 1) the injury alleged by plaintiff (discharge from employment for complaining about alleged RICO violations) is too remote to confer standing under § 1962(a), (b) and (c) and his allegations of conspiracy are insufficient to confer standing independently under § 1962(d); 2) Western Auto, as a RICO enterprise, is not distinct from the defendants; 3) the legitimate business activities of Western Auto and its merchandise suppliers (the Co-op and Extra Effort programs) do not constitute an "association-in-fact" enterprise; and 4) as a matter of law, a RICO conspiracy cannot exist between Western Auto and one of its employees, Leach.

Although defendants originally asserted that plaintiff's RICO claims should be dismissed because he did not plead mail fraud with sufficient specificity, they later abandoned this ground for dismissal.

Defendants argue that plaintiff's common law wrongful discharge claim must be dismissed because plaintiff does not allege that he was discharged for refusing to violate a statute, a regulation based on a statute, or a constitutional provision.

## I. *Standard of Review*

In *Conley v. Gibson,* the United States Supreme Court stated that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. 41, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (citation omitted). "A complaint must be viewed in the light most favorable to the plaintiff and should not be dismissed merely because the court doubts that a plaintiff will be able to prove all of the necessary factual allegations." *Bennett v. Berg,* 685 F.2d 1053, 1057–58 (8th Cir.1982), *aff'd in part and rev'd in part,* 710 F.2d 1361 (1983), *cert. denied,* 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983). " 'Thus, as a practical matter, a dismissal under Rule 12(b)(6) is likely to be granted *only* in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief.' " *Fusco v. Xerox Corp.,* 676 F.2d 332, 334 (8th Cir.1982)

(quoting *Jackson Sawmill Co. v. United States,* 580 F.2d 302, 306 (8th Cir.1978)), *cert. denied,* 439 U.S. 1070, 99 S.Ct. 839, 59 L.Ed.2d 35 (1979).

## II. *Standing*

■ To meet the standing to sue requirement under RICO, a plaintiff must allege injury to his business or property "by reason of" unlawful predicate acts. 18 U.S.C. § 1964(c). The "by reason of" language "simply imposes a proximate cause requirement on plaintiffs. The criminal conduct in violation of § 1962 must, directly or indirectly, have injured the plaintiff's business or property. A defendant who violates § 1962 is not liable for treble damages to everyone he might have injured by other conduct, nor is the defendant liable to those who have not been injured." *Haroco, Inc. v. American National Bank and Trust Co.,* 747 F.2d 384, 398 (7th Cir.1984), *aff'd,* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985). The issue of proximate causation is a question of law for the court, taking into consideration such factors as foreseeability of a particular injury, intervention of independent causes and the factual directness of the causal connection. *Brandenburg v. Seidel,* 859 F.2d 1179, 1189 (4th Cir.1988) (citation omitted).

Defendants contend that, as a matter of law, the alleged illegal RICO activity is not the proximate cause of Bowman's discharge. A number of courts have considered whether an employee who is discharged form his employment for complaining about or reporting illegal acts by his employer has adequately pled facts to establish standing under RICO. Defendants cite an impressive array of decisions from other jurisdictions which hold that a discharged employee does not have standing to sue under RICO because the RICO activity was not the proximate cause of the discharge. These courts have found the act of whistle-blowing, not the illegal RICO activity, to be the cause of the employee's injury. *Reddy v. Litton Industries, Inc.,* 912 F.2d 291 (9th Cir.1990); *O'Malley v. O'Neill,* 887 F.2d 1557, 1562 (11th Cir. 1989), *cert. denied,* — U.S. ——, 110 S.Ct. 2620, 110 L.Ed.2d 641 (1990); *Burdick v.*

*American Express Co.*, 865 F.2d 527, 529 (2d Cir.1989); *Cullom v. Hibernia National Bank*, 859 F.2d 1211, 1215 (5th Cir.1988).

■ Plaintiff acknowledges these authorities but points out that the Eighth Circuit Court of Appeals takes a contrary view. In *Komm v. McFliker*, 662 F.Supp. 924, 927–28 (W.D.Mo.1987), Judge Sachs considered whether a whistle blower has standing to sue under RICO when the whistle blower's discharge is only indirectly caused by the conduct alleged to be illegal under RICO. Relying on *Terre Du Lac Ass'n, Inc. v. Terre Du Lac, Inc.*, 772 F.2d 467, 472–73 (8th Cir.1985) (citation omitted), *cert. denied*, 475 U.S. 1082, 106 S.Ct. 1460–61, 89 L.Ed.2d 718 (1986), Judge Sachs stated that "the Eighth Circuit seems to be holding firm in allowing RICO recoveries when the illegal conduct has indirectly harmed the plaintiff.... Therefore, although plaintiff does not claim that he was terminated for refusing to act illegally ... he does now allege a claim for which he could apparently receive relief in the Circuit under RICO." *Komm v. McFliker*, 662 F.Supp. at 928.

I, too, am bound to follow the guidance of the Eighth Circuit Court of Appeals despite my doubts. Thus, plaintiff has standing to bring § 1962(a), (b) and (c) RICO claims. Because plaintiff's discharge is not too remote to confer standing under these RICO provisions, he also has standing to bring his § 1962(d) conspiracy claim.

### III. Separateness of Defendants from the Enterprise

RICO prohibits a person from using a pattern of racketeering activity or the proceeds derived from this activity to affect an enterprise in the ways prohibited under § 1962. A person "includes any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). The persons or defendants in this action are Western Auto and Leach. An enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

Plaintiff alleges there are two enterprises in this case: 1) Western Auto; and 2) "[t]he legitimate business activities of Western Auto and its merchandise suppliers, including the Co-op and Extra Effort programs." First Amended Complaint at ¶¶ 10–11.

### A. Section 1962(c) Claim

■ Section 1962(c) applies only to "any person employed by or associated with any enterprise" and makes it unlawful for such a person "to conduct or participate ... in the conduct of such enterprise's affairs through a pattern of racketeering activity...." Most courts have held that in a RICO violation based on § 1962(c), the same individual or entity may not be alleged as both the liable person (the defendant) and the enterprise (the victim) "since it makes little sense to speak of a person being 'employed' by himself or victimizing himself." J.S. Rakoff and H.W. Goldstein, *RICO Civil and Criminal Law and Strategy*, § 105[3], Exhibit A, Suggestions in Support of Defendants' Motion to Dismiss. The Eighth Circuit Court of Appeals requires that the enterprise be distinct from the person in § 1962(c) RICO claims. *Atlas Pile Driving Co. v. DiCon Financial Co.*, 886 F.2d 986, 995 (8th Cir.1989); *Bennett v. Berg*, 685 F.2d at 1061–62.

Accordingly, plaintiff cannot bring a § 1962(c) claim against Western Auto in which Western Auto also is alleged to be the enterprise.

Plaintiff argues that he can bring a § 1962(c) RICO claim against Western Auto because he has alleged the existence of an "association in fact" enterprise distinct from Western Auto itself. This enterprise involves the joint effort of Western Auto and its merchandise suppliers, including the Co-op and Extra Effort programs, to promote the resale of the suppliers' products through Western Auto's retail stores. First Amended Complaint at ¶¶ 9–10. Defendants argue that "the association-in-fact alleged by plaintiff is, on its face, insufficient under Eighth Circuit RICO law." Reply Suggestions at 10.

■ An association-in-fact is defined as "any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An association-in-fact must exhibit each of the following characteristics: 1) a shared or common purpose; 2) a continuity of function; and 3) an ascertainable structure distinct from the pattern of racketeering activity itself. *Atlas Pile Driving Co.*, 886 F.2d at 995–96 (citations omitted); *United States v. Bledsoe*, 674 F.2d 647, 664–65 (8th Cir.1982), *cert. denied*, 459 U.S. 1040, 103 S.Ct. 456, 74 L.Ed.2d 608 (1982). In regard to the third characteristic of an association-in-fact enterprise, the Eighth Circuit Court of Appeals has held that the enterprise must be substantially different from the acts which form the pattern of racketeering activity. *United States v. Anderson*, 626 F.2d 1358, 1365 (8th Cir.1980), *cert. denied*, 101 S.Ct. 1351 (1981).

■ Plaintiff has adequately alleged an association-in-fact enterprise. Plaintiff has alleged a shared purpose between Western Auto and its merchandise suppliers. "Western Auto and its merchandise suppliers at all relevant times herein were associated in a joint effort to market and promote the resale of the merchandisers' products through Western Auto's retail stores." First Amended Complaint at ¶ 9. Plaintiff has alleged that the Extra Efforts and Co-op programs functioned as continuing units during the period of years in which the pattern of racketeering activity allegedly occurred. *Id.* Plaintiff also has alleged that the Co-op and Extra Effort programs had an ascertainable structure distinct from the pattern of racketeering activity. The Co-op and Extra Effort programs are the "legitimate business activities of Western Auto and its merchandise suppliers" that involved a "joint effort to market and promote the resale of the merchandisers' products through Western Auto's retail stores." *Id.* These legitimate activities are distinct from the alleged pattern of racketeering that involved the "repeated acts by Western Auto, Leach and other employees over a period of years, the number of which is not known to plaintiff, of sending fraudulent bills to merchandise suppliers." First Amended Complaint at ¶ 16.

Because plaintiff has adequately pled the existence of an association-in-fact enterprise separate from Western Auto itself, plaintiff may bring a § 1962(c) RICO claim against Western Auto. Because Leach is separate both from Western Auto and the Extra Effort and Co-op programs, plaintiff may bring a § 1962(c) RICO claim against him.

### B. Section 1962(a) and (b) Claims

Sections 1962(a) and (b) do not apply only to a person "employed by or associated with" an enterprise. Accordingly, most courts have held that the person (defendant) and the enterprise do not have to be distinct in RICO claims brought under these two sections. J.S. Rakoff and H.W. Goldstein, *RICO Civil and Criminal Law and Strategy* at § 1.05[3], Exhibit A, plaintiff's Suggestions in Opposition to Defendants' Motion to Dismiss. In *Haroco, Inc.*, 747 F.2d at 402, the Seventh Circuit Court of Appeals considered the difference between § 1962(a) and (c) claims.

> Subsection (a) does not contain any of the language in subsection (c) which suggests that the liable person and the enterprise must be separate. Under subsection (a), therefore, the liable person may be a corporation using the proceeds of a pattern of racketeering activity in its operations. This approach to subsection (a) thus makes the corporation-enterprise liable under RICO when the corporation is actually the direct or indirect beneficiary of the pattern of racketeering activity, but not when it is merely the victim, prize, or passive instrument of racketeering. This result is in accord with the primary purpose of RICO, which, after all, is to reach those who ultimately profit from racketeering, not those who are victimized by it.

Subsection (b) also does not contain language requiring that the person be employed by or associated with an enterprise. Subsection (b) prohibits a person from acquiring an interest in an enterprise through a pattern of racketeering activity. In *Liq-*

*uid Air Corp. v. Rogers,* 834 F.2d 1297, 1307 (7th Cir.1987), *cert. denied,* 492 U.S. 917, 109 S.Ct. 3241, 106 L.Ed.2d 588 (1989), the Seventh Circuit Court of Appeals stated:

> Whether a single entity may be both a liable 'person' and an 'enterprise' under subsection (b) depends on whether the language of subsection (b) is more like (a) or (c).... We can see no distinction between 'investing in an enterprise' and 'acquiring an interest in an enterprise' sufficient to require separate entities for a subsection (b) violation. Unlike subsection (c), which requires a *relationship* between the 'person' and the 'enterprise' (employer-employee), subsections (a) and (b) require only the *use* of an 'enterprise' by a 'person.' Accordingly, we hold that, like subsection (a), subsection (b) does not require the existence of an enterprise separate and distinct from the person sought to be held liable.

*Accord, Wilcox v. First Interstate Bank of Oregon, N.A.,* 815 F.2d 522, 529 (9th Cir. 1987), *aff'd,* 815 F.2d 522 (1987). *See also Bumgarner v. Blue Cross & Blue Shield of Kansas, Inc.,* 716 F.Supp. 493, 501 (D.Kan.1988).

The Eighth Circuit Court of Appeals has not addressed the issue of whether the enterprise must be distinct from the person in § 1962(a) and (b) claims. In *Bennett v. Berg,* 685 F.2d at 1060 n. 8, the court stated that "[b]ecause we conclude that appellants have stated a claim under § 1962(c), we do not reach the question whether claims may also be stated under subsections (a) and (b)."

■ Because subsections (a) and (b) do not contain the requirement of subsection (c) that the person be employed by or associated with the enterprise and because the majority of circuit courts that have considered this issue have concluded that the person does not need to be distinct from the enterprise in subsection (a) and (b) claims, I conclude that, absent contrary authority from the Eighth Circuit Court of

Appeals, plaintiff is not precluded from bringing § 1962(a) and (b) claims against Western Auto in which Western Auto also is alleged to be the enterprise.

## IV. *RICO Conspiracy Claim*

Section 1962(d) provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section." Defendants argue that a RICO conspiracy claim cannot be brought when the conspiracy is alleged to exist between a corporation and one of its employees. "Because the Complaint merely attempts to allege a conspiracy between Western Auto and its officer/employee John Leach, the conspiracy claim must be dismissed." Suggestions in Support of Motion to Dismiss at 16.

District courts are split on the issue of whether corporate officers and employees can conspire with their corporate employer to violate the RICO statute. For cases allowing RICO intra-corporate conspiracy theories, *see Pandick, Inc. v. Rooney,* 632 F.Supp. 1430, 1435–36 (N.D.Ill.1986); *Callan v. State Chemical Mfg. Co.,* 584 F.Supp. 619, 623 (E.D.Pa.1984); *Saine v. A.I.A., Inc.,* 582 F.Supp. 1299, 1307 n. 9 (D.Colo.1984); *Mauriber v. Shearson/American Express, Inc.,* 567 F.Supp. 1231, 1241 (S.D.N.Y.1983). Contra, *see Lawaetz v. Bank of Nova Scotia,* 653 F.Supp. 1278, 1287 (D.V.I.1987) (collecting cases).

The Seventh Circuit Court of Appeals is the only appellate circuit that has considered the issue of whether corporate officers and employees can conspire with their employer to violate the RICO statute.[1] In *Ashland Oil, Inc. v. Arnett,* 875 F.2d 1271, 1281 (7th Cir.1989), the court stated:

> The plaintiffs respond in kind, citing footnote 22 in *Haroco, Inc.,* 747 F.2d at 403, where this court distinguished the Supreme Court's disapproval of antitrust intracorporate conspiracies in *Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752, 104 S. Ct. 2731, 81 L.Ed.2d 628 (1984), from conspiracies alleged un-

---

1. In *Shearin v. E.F. Hutton Group, Inc.,* 885 F.2d 1162, 1166–67 (1989), the Third Circuit Court of Appeals held that a corporation could conspire with its wholly owned subsidiaries to violate the RICO statute.

der RICO. In *Haroco, Inc.*, we noted that *Copperweld Corp.*, at least in an alleged conspiracy between a parent corporation and its wholly-owned subsidiary, 'does not extend to RICO's provisions in 18 U.S.C. § 1962(c) primarily because the Sherman Act is premised, as RICO is not, on the basic distinction between concerted and independent action.' 747 F.2d at 403 n. 22 (citing *Copperweld Corp.*, 467 U.S. at 769, 104 S. Ct. at 2740). Since a subsidiary and its parent theoretically have a community of interest, a conspiracy 'in restraint of trade' between them poses no threat to the goals of anti-trust law—protecting competition. In contrast, intracorporate conspiracies do threaten RICO's goals of preventing the infiltration of legitimate businesses by racketeers · and separating racketeers from their profits.

■ Based on the rationale of the Seventh Circuit Court of Appeals in *Ashland Oil*, I conclude, absent contrary authority from the Eighth Circuit Court of Appeals, that plaintiff has stated a claim upon which relief can be granted pursuant to 18 U.S.C. § 1962(d). Moreover, plaintiff also has alleged that a conspiracy existed between Leach and other individual employees, not simply Leach and his employer Western Auto.

In his Suggestions in Opposition, plaintiff cites to material outside the pleadings. Rule 12(b), Federal Rules of Civil Procedure, provides in part that "if, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. . . ." Because I did not consider the matters outside the pleadings presented by plaintiff, defendants' motion regarding plaintiff's § 1962(d) claim was not treated as a summary judgment motion.

## V. *Missouri Common Law Wrongful Discharge Claim*

Missouri recognizes a public policy exception to the employment-at-will doctrine.

To be sustainable as an actionable claim for wrongful discharge, an employee suing under the public policy exception to the employment-at-will doctrine must allege and prove that conduct required of him by the employer would have amounted to a violation of a statute, constitutional provision or regulation adopted pursuant to a statute, and also that his discharge was attributable to a refusal to perform the unlawful act or his performance of a mandated lawful act contrary to the directions of his employer.

*Crockett v. Mid–America Health Services*, 780 S.W.2d 656, 658 (Mo.App.1989).

■ Plaintiff alleges defendants' conduct violated statutory provisions. In ¶ 15 of his First Amended Complaint, plaintiff alleges that acts carried out in the double dipping or double billing scheme violate the United States Mail Fraud statute, 18 U.S.C. § 1341, and constitute racketeering activity as defined by 18 U.S.C. § 1961(1). In ¶ 16, plaintiff alleges that these repeated acts constitute a pattern of racketeering activity as defined in § 1961(5). Plaintiff alleges that this pattern of activity is a violation of the RICO statute. In ¶ 31 of the First Amended Complaint, plaintiff alleges that the double dipping or double billing scheme "was against public policy and a violation of the criminal statutes of the United States and the State of Missouri."

However, plaintiff does not allege specifically that he was discharged for *refusing to participate in the double billing scheme* but, instead, for *protesting* defendants' acts. In ¶ 34, plaintiff alleges that "[s]ubsequent to his protest of the 'double billing' or 'double dipping' policy and because of this conduct, plaintiff was wrongfully discharged from his employment with Western Auto in violation· of the public policy and common law of the State of Missouri."

Defendants argue that plaintiff's wrongful discharge claim must fail, as a matter of law, because he does not allege that he was discharged because he refused to take part in the double billing scheme. Plaintiff asserts that "[a]lthough his First Amended Complaint does not use the phrase, 're-

fused to perform the double billing scheme,' because he was Director of Retail Advertising, his protest against it constituted a refusal to perform any job duties that included, whether direct or through the supervision of others, the continuation of the scheme." Suggestions in Opposition at 17.

"The public policy exception to the employment at will doctrine is narrow, and a plaintiff who seeks to come within its scope must expressly plead that his employer has discharged him because of his refusal to violate the law." *Crockett v. Mid–America Health Services,* 780 S.W.2d at 658 (citations omitted). Because plaintiff has not expressly pled that he was discharged because he refused to participate in the double billing scheme, he has not stated a wrongful discharge claim upon which relief can be granted under Missouri law. However, before Count V is dismissed, I will afford plaintiff an opportunity to seek leave to amend the allegations of Count V.

## VI. *Conclusion*

Accordingly, it is ORDERED that:

1) defendants' Motion to Dismiss Counts I, II and IV is denied;

2) defendants' Motion to Dismiss Count III is denied with the exception that plaintiff cannot bring a § 1962(c) claim against Western Auto in which Western Auto also is alleged to be the enterprise;

3) within 15 days from the date of this order, plaintiff may seek leave to amend his wrongful discharge claim. If plaintiff does not do so, Count V will be dismissed pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure; and

4) within 30 days from the date of this order, the parties shall submit a Joint Proposed Scheduling Order that complies with Local Rule 15.