Ellen **WYRICK**, Plaintiff,

v.

**TWA CREDIT UNION** and **Donald CHAPIN**, Defendants.

No. 92–0663–CV–W–6.

United States District Court,
W.D. Missouri, W.D.

Oct. 16, 1992.

Stephen G. Mirakian, Wyrsch, Atwell, Mirakian, Lee & Hobbs, P.C., Kansas City, Mo., for Ellen Wyrick.

John M. Lilla, Jackson & Bailey, P.C., Kansas City, Mo., for TWA Credit Union.

Lynne J. Bratcher, Miller, Dougherty & Modin, Kansas City, Mo., for Donald Chapin.

## MEMORANDUM AND ORDER

SACHS, Chief Judge.

Before the court is defendant TWA Credit Union's [1] motion to dismiss. A motion to dismiss brought under Fed.R.Civ.P. 12(b)(6) shall be treated as a motion for summary judgment pursuant to Fed.R.Civ.P. 56, when the motion incorporates matters outside the pleading. Since defendant TWA Credit Union has attached three exhibits to its motion, the motion will be considered under Rule 56.

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). Facts must be viewed in the light most favorable to the nonmoving party, who must be given the benefit of all reasonable inferences which may be made from the facts disclosed in the record. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90

S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Raschick v. Prudent Supply, Inc.*, 830 F.2d 1497, 1499 (8th Cir.1987), *cert. denied*, 485 U.S. 935, 108 S.Ct. 1111, 99 L.Ed.2d 272 (1988).

If a party is unable to make a sufficient showing as to some essential element of its case upon which it will bear the ultimate burden of proof at trial, all other facts are necessarily immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A party seeking summary judgment bears the initial burden of demonstrating to the court that an essential element of the nonmoving party's case is lacking. *Id.* The burden then shifts to the nonmoving party to come forward with sufficient evidence to demonstrate that there is a factual controversy as to that element, or to explain why such evidence is not currently available. *Id.* Fed.R.Civ.P. 56(e). The standard for determining whether a factual dispute is genuine is the same as the standard applied to motions for a directed verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The nonmoving party must come forward with sufficient evidence to allow a reasonable jury to find in its favor. *Id.* at 251, 106 S.Ct. at 2511.

Defendant argues that plaintiff's first claim should be dismissed because she failed to satisfy the requirements to maintain a private right of action under 12 U.S.C. § 1790b. That section provides for a private right of action for retaliatory discharge or discrimination after an employee reports unlawful acts by a credit union:

(a) In General. (1) Employees of credit unions. No insured credit union may discharge or otherwise discriminate against any employee with respect to compensation, terms, condition, or privileges of employment because the employ-

---

1. It has been brought to the court's attention that although plaintiff refers to defendant as 'TWA', the defendant is properly identified as TWA Credit Union. TWA is the registered trademark of Trans World Airlines. Defendant's Motion to Dismiss, at 3. TWA has no ownership interest in or control of defendant TWA Credit Union and it is not, nor is it alleged to be, a defendant in this lawsuit. Incorrect references to TWA in this case may impair that company's registered trademark and may cause confusion in these proceedings. The court requests that future documents correctly identify defendant as TWA Credit Union.

ee (or any person acting pursuant to the request of the employee) provided information to the Board or the Attorney General regarding any violation of any law or regulation by the credit union or any director, officer, or employee of the credit union.

12 U.S.C. § 1790b. The act defines the "Board" as meaning the National Credit Union Administrative Board. Defendant argues that since plaintiff never made such a report to the Board or to the Attorney General, there is no cause of action under this statute. Plaintiff acknowledges that she reported the alleged unlawful activity only to the TWA Credit Union Supervisory Board and the Board of Directors. Plaintiff Wyrick's Suggestions in Response to Motion to Dismiss, at 3. However, plaintiff argues that the cause of action should still be allowed for two reasons. First, she argues that TWA Credit Union's interpretation of the statute requiring a report to be made to the Board or the Attorney General is overly restrictive, against the intended purpose of the act, and an unreasonable interpretation of that provision. Second, plaintiff maintains that defendant should be estopped to raise this defense because of its own misconduct.

According to the plain language of the statute, this provision only applies to situations where information has been provided to the Board or the Attorney General. This interpretation, contrary to the argument of plaintiff, is the most reasonable. To read the cause of action to include reports to other persons would require the court to ignore the plain language of the statute and the purposes of the legislation.

One of the stated purposes of the FIRRE Act of 1989, which contained the first version of the current whistleblower statute, was to "enhance the regulatory enforcement powers of the depository regulatory agencies to protect against fraud, waste and insider abuse." H.R.Rep. No. 101-54(I), 101st Cong., 1st Sess., at 308, *reprinted in* 1989 U.S.C.C.A.N. 86, 103-04. This purpose is furthered by protecting those employees who come to the federal government or regulatory boards with information about those alleged to be violat-

ing the laws. *See Hicks v. Resolution Trust Corp.,* 738 F.Supp. 279, 285 (N.D.Ill. 1990). The Board offers rewards to those who come forward with information leading to recoveries or civil penalties against offender credit unions. 12 U.S.C. § 1790c. The purpose of furthering regulatory action to protect against fraud is only indirectly furthered by granting a cause of action for those who report alleged violations to persons other than the Board or the Attorney General. Violations reported to the Board or Attorney General will be brought to the attention of those directly responsible for making regulatory decisions about the credit union. If the information is never brought to their attention, but to a nonregulatory authority instead, the regulatory authority does not have the chance to take corrective or preventive measures as is the goal of the statute. There is no evidence in the legislative history that one purpose of the legislation was simply to eliminate retaliation against an employee for reporting possible unlawful activity to management, however admirable such a goal may be. The goal of the statute clearly is to advance the effectiveness of the regulatory regime. Encouraging "whistleblowing" to a federal official is but one way of reaching that goal.

Plaintiff argues that the statute should be read expansively to effectuate the remedial purposes of the overall legislation and to further the purposes of encouraging violations of the law to be disclosed. Congress has determined the manner in which they would like to encourage reports of unlawful conduct. The statute helps to direct such reports to the proper regulatory authorities. Any remedial purpose of the statute is secondary to its broad regulatory goal. Therefore, plaintiff's argument that the court should further the statute's broad remedial goal by allowing this action is not persuasive where that goal is not broad and is only secondary to the real purpose of the act.

The only case that has indirectly addressed the existence of a right of action under this statute where there was no report to the Board or the Attorney General,

stated in dicta that the plaintiffs would not have a cause of action where they had not alleged that they had reported the possible violations of the law to the Board or the Attorney General. *Ridenour v. Andrews Federal Credit Union,* 897 F.2d 715, 721 n. 5 (4th Cir.), *reh'g denied en banc* (1990). This case supports this court's interpretation of the statute.

Congress deliberately chose the wording of the statute to include the Board and the Attorney General. A proposed version of the same statute would have covered any employee who provided information to "any financial institution, regulatory authority or to the Department of Justice...." S. 1513–02, 101st Cong., 1st Sess. 135 Cong.Rec. 2393, 2495 (1989). This broader language was not adopted. Had the Congress wished to extend coverage of this measure to all forms of retaliatory action by credit unions, they surely could have. Instead, the language adopted shows that they intended it to only cover those instances resulting from reports to regulatory authorities. Absent evidence to the contrary, this court will not reinterpret the clear language of the statute and go beyond the legislative intent.

■ Plaintiff also urges the court to estop defendant from raising this defense. However, the court may not create the facts supporting subject matter jurisdiction where none are present. Plaintiff argues that dismissing this cause of action rewards defendant for discharging plaintiff before she had a chance to report to the Board or the Attorney General. Defendant's conduct, however undesirable it may have been, will not make a federal case where none exists. Congress spoke very clearly about the situations in which whistleblowers will be protected. Should Congress desire to address plaintiff's particular situation, it may enact appropriate legislation, but this court may not act in Congress's place.

Since plaintiff has presented no facts to show that she ever made a report to the Board or the Attorney General, the requirements of the statute have not been met and the court must dismiss this claim.

Defendant TWA Credit Union next argues that plaintiff's Count II should be denied because she failed to exhaust her administrative remedies. Defendant claims plaintiff never presented the charge relating to her termination to the EEOC and therefore she should not be allowed to bring it in a Title VII discrimination case.

■ Before bringing a Title VII suit in federal court, the complainant must exhaust all administrative remedies by presenting the allegations of the complaint to the proper administrative agency. *See Ong v. Cleland,* 642 F.2d 316, 319 (9th Cir.1981). Generally, any claim that is not presented to the agency may not be brought in federal court and must be dismissed for lack of exhaustion of administrative remedies. *Id.* Plaintiff's Count II for relief is a claim of retaliatory discharge, actionable under 42 U.S.C. § 2000e. Plaintiff filed a charge with the proper agencies alleging retaliatory discrimination, but she acknowledges that prior to filing this complaint, she never presented the retaliatory discharge claim to the EEOC. *Id.*

■ A new complaint need not be filed as to each instance of discrimination. To require a plaintiff to file an administrative complaint as to each specific charge she wished to pursue in federal court would raise complicated and endless procedural bars to discrimination suits. *Anderson v. Block,* 807 F.2d 145, 148 (8th Cir.1986). To require successive filings also would not further the purposes of administrative review of the charges. The administrative requirement is meant to allow the parties to arrive at a consensual resolution of the complaint. Successive complaints would not raise the likelihood of success of this process. *Anderson,* 807 F.2d at 148. Therefore, the Eighth Circuit has adopted a rule that allows for claims to be brought in the civil suit that were not precisely raised in the administrative charges. "A plaintiff will be deemed to have exhausted administrative remedies if the allegations of the judicial complaint are like or reasonably related to the administrative charges that were timely brought." *Id.* In other

words, the court will allow a charge to be included where it was "fairly encompassed within the scope of the administrative charges." *Id.* The scope of the complaint will be broadened to include the new allegation where the new allegation could be reasonably expected to have grown out of the EEOC's investigation of the original claim. *See, e.g., Johnson v. General Elec.,* 840 F.2d 132, 139 (1st Cir.1988); *Miller v. International Tel. & Tel. Corp.,* 755 F.2d 20, 23–24 (2nd Cir.), *cert. denied,* 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985); *Fellows v. Universal Restaurants, Inc.,* 701 F.2d 447, 450 (5th Cir.), *cert. denied,* 464 U.S. 828, 104 S.Ct. 102, 78 L.Ed.2d 106 (1983).

■ Plaintiff's original administrative charge was filed on October 16, 1991. It alleged that she had been discriminated against in retaliation for voicing concerns to defendant Chapin about sexual harassment, sexual discrimination and other unlawful employment practices. She alleged that as a result of this retaliation, employees under her supervision were denied overtime, she was denied an agreed upon six month salary review, job duties were taken from her, she was subjected to unwarranted verbal reprimands, she was criticized and humiliated in front of others by defendant Chapin, her ability to execute her job responsibilities was impaired, she was not promoted, her files were relocated, she was accused of improprieties, and that she was put under surveillance. Charge of Discrimination, attached to Plaintiff's Suggestions in Reply to Defendant's Motion to Dismiss as Exhibit "A," at 1. She alleged that the violations occurred "prior to 9/19/91 and continuing thereafter." *Id.* That is the charge that was investigated by the agency, and that was the charge to which TWA Credit Union responded. In her complaint filed with this court, plaintiff alleges the following act constituting discrimination under Count II:

14. Wyrick was fired by TWA [Credit Union] at the instance of Chapin on February 26, 1992 because Wyrick had participated in and revealed to the TWA [Credit Union] Supervisory Committee and to Chapin sexual harassment and discrimination against female employees in direct violation of the Civil Rights Act of 1964 as amended and the Missouri Human Rights Act Section 213 (R.S.Mo.).

Plaintiff's Amended Complaint, at 4. The substance of the events alleged in the charge and the complaint actually filed is similar. Both claim that she was retaliated against for making allegations of sexual harassment. Both include the alleged report she made to Mr. Chapin as one of the events that precipitated the discrimination. The administrative complaint listed the various ways in which she was discriminated against; the Title VII complaint merely added the most recent and most severe example. Thus, instead of alleging a separate, new instance of discrimination, Wyrick alleges that her termination is merely a continuation of the retaliation outlined in the administrative charge. The October 16, 1991, administrative charge even states that the discriminatory retaliation is "continuing." In that context, the overall conduct involved was fairly included in the charge, and reasonably could be expected to have been within the scope of the investigation of the EEOC of the original charge.

The court notes that the right to sue letter granted by the Missouri Commission on Human Rights is dated April 15, 1992. The date of the EEOC right to sue letter is May 22, 1992. Both administrative actions, therefore, were still ongoing when plaintiff was fired; but plaintiff does not allege that she ever informed either agency of her termination, which occurred on February 26, 1992. Such an action would have clearly brought the charge of retaliation within scope of the agency complaint. However, the law does not require that the allegation was actually presented to the commission, or that it actually arose during their investigation. *Fellows v. Universal Restaurants, Inc.,* 701 F.2d 447, 450 (5th Cir.), *cert. denied,* 464 U.S. 828, 104 S.Ct. 102, 78 L.Ed.2d 106 (1983). The law only requires that the new charge be fairly encompassed by the prior charge. Therefore, for the reasons stated above, the court finds that plaintiff's claim of retaliatory discharge

**1182**

was reasonably like the administrative charge of retaliatory discrimination, and hence plaintiff has exhausted administrative remedies with respect to Count II.

■ Count III of plaintiff's complaint alleges retaliatory discharge based upon the Missouri Human Rights Act, Chapter 213 (R.S.Mo.). Defendant makes the same argument as to exhaustion of remedies to Count III as it does to Count II. Defendant acknowledges that §§ 213.075 and 213.111 of that act establish an administrative procedure identical to that required under the federal civil rights act. Therefore, since the administrative remedies have been exhausted as to the federal claim, they are exhausted as to the state claim as well.

■ Defendants argue that plaintiff's Count IV, alleging wrongful discharge, should be dismissed because Missouri is an at-will employment state and does not recognize this cause of action. It is true that Missouri is an employment-at-will state, and that an employer may fire an employee with or without cause, and not be liable for wrongful discharge. *Johnson v. McDonnell Douglas Corp.*, 745 S.W.2d 661, 662 (Mo. banc 1988). However, Missouri courts have recognized a "public policy" exception to that rule. An employee who has the "benefit of a constitutional provision, a statute, or a regulation based on the statute," may maintain a cause of action when she is discharged in violation of that statute. *Id.* at 663.

■ Here, plaintiff claims that she was discharged in violation of 42 U.S.C. § 2000e and the Missouri Human Rights Act, Chapter 213. While it is arguable that plaintiff has brought herself within the language of *Johnson*, it is not clear that Missouri common law automatically gives protection to persons whose federal statutory rights have been allegedly violated, or that it gives additional protection to persons who have rights under Missouri statutes, by reason of a statute that contains its own remedial provisions, and is arguably comprehensive in scope.

*Johnson* has been construed as a cautious, narrowing ruling creating limits on the public policy exception. *Crockett v. Mid–America Health Services*, 780 S.W.2d 656 (Mo.App.1989); *Bowman v. Western Auto Supply Co.*, 773 F.Supp. 174, 180–1 (W.D.Mo.1991) (dismissing a protestor claim in the absence of allegation that plaintiff claims to have been discharged for personally refusing to engage in illegal conduct).

Absent additional allegations or authorities, presented before this case is ready for trial, it is my judgment that Missouri common law is not as protective as plaintiff contends, in Count IV.

ORDERED that defendant's motion to dismiss Counts I and IV of plaintiff's complaint is GRANTED. It is further

ORDERED that defendant's motion to dismiss Counts II and III is DENIED.